## STATE v. ZOLANTAKIS.

No. 4458.   Decided September 15, 1927.   (259 P. 1044.)

F. W. *James*, of Salt Lake City, for appellant.

*Harvey H. Cluff*, Atty. Gen., and *L. A. Miner*, Asst. Atty. Gen., for the State.

HANSEN, J.

The defendant prosecutes this appeal from a judgment of the district court of Salt Lake county whereby a suspension of a sentence was vacated and the defendant ordered committed to the state prison for the crime of being a persistent violator of the prohibition law of the state. The case was heretofore argued and submitted to this court and an opinion rendered by a divided court affirming the judgment. Thereafter defendant filed a petition for rehearing, which was granted. The majority of the court at the time the rehearing was granted, and as now constituted, are not in accord with the conclusions reached by the majority of the court in the original opinion.

On July 23, 1925, Peter Zolantakis pleaded guilty to a charge of being a persistent violator of an act prohibiting the manufacture and use of intoxicating liquors and regulating the sale and traffic therein, and particularly sections 3343, and 3345 of title 54, Comp. Laws Utah 1917, as amended by Laws Utah, 1919, c. 66. Thereupon the court pronounced judgment and sentence "that the defendant, Peter Zolantakis, be confined and imprisoned in the state prison in and for the state of Utah, for an indeterminate term, as provided by section 9062, Compiled Laws Utah 1917, and that said sentence be, and the same hereby is, suspended during the good behavior of said defendant." The crime to which defendant pleaded guilty is a felony.

The power of trial courts to suspend sentences is expressly granted by the provisions of chapter 74, Laws Utah 1923, which reads as follows:

"Upon conviction of any crime or offense if it appears compatible with the public interest the court having jurisdiction may suspend the imposition or the execution of sentence and may place the defendant on probation for such period of time as the court shall determine. The court may subsequently increase or decrease the probation period and may revoke or modify any condition of probation. While on probation the defendant may be required to pay in one or several sums any fine imposed at the time of being placed on probation; may be required to make restitution or reparation to the aggrieved party or parties for the actual damages or losses caused by the offense for which conviction was had; and may be required to provide for the support of his wife and others for whose support he may be legally liable."

Under date of March 5, 1926, a citation was issued under the seal and signature of the clerk of the district court of Salt Lake county whereby the defendant was cited and required to appear before said district court of Salt Lake county on Saturday, the 6th day of March, A. D. 1926, at 10 o'clock a. m. of that day, then and there to show cause why the suspended sentence dated July 23, 1924, should not be canceled, vacated and set aside. This citation was returned without having been served because, as stated in the sheriff's return, the defendant was absent from the state. On April 5, 1926, a bench warrant was issued directing the sheriff of Salt Lake county to attach the body of the defendant and bring him before the court forthwith. The bench warrant was served upon the defendant on the date of its issuance and the defendant was arrested. Under date of April 6, 1926, another citation was issued under the seal and signature of the clerk of the district court of Salt Lake county whereby defendant was cited and required to appear before said court "on Saturday, the 10th day of April, A. D. 1926, at 10 o'clock a. m. of that day then and there to show cause, if any you have, why your suspended sentence should not be vacated and set aside." Both of these citations

and the bench warrant were issued without any affidavit, complaint, information, motion, or other writing having been made or filed charging the defendant with any lack of good behavior or otherwise, and were made returnable before a judge other than the judge who passed sentence and suspended the same.

When the case was called for hearing, the following proceedings were had:

D. H. Clayton, a witness called by the state, testified, in substance, that during the month of February, 1926, he went to a point a little south of or opposite the place where Mr. Zolantakis resided, and while there saw Zolantakis come out of the rear door of the house and walk to the back of the lot, then back into the house, and, after remaining in the house for a few minutes, he came out of the side gate into an alley.

Reed Billings, a witness called by the state, testified that he was, and for a number of years had been, a police officer of Salt Lake City; that he was and had been acquainted with Peter Zolantakis for the past 7 or 8 years; that defendant resided at 47 South Fifth West street with his family, consisting of a wife and at least two children; that on March 2, 1926, while crossing the street from the residence of defendant, he saw Mr. Zolantakis come out of the side door of the house and go down towards the garage, then turn around and go back into the house; that about 3 or 4 minutes later defendant came out of the house again and went south on Fifth West street to Second South street, then east on Second South street; that this occurred about 6 or 6:30 o'clock in the morning.

A. A. Reese, called by the state, testified that he has known the defendant, Peter Zolantakis, by sight for about 2 years; that defendant resided at 47 South Fifth West street; that the wife and children of the defendant resided in his house; then on March 2, 1926, witness went to the house of the defendant in company with Officers Neve, O'Brien, and Black; that they had a search and seizure

warrant and made a search of defendant's premises; that as a result they found about 30 pints of intoxicating liquors, consisting of moonshine whiskey and mestika; that some of the liquor was found in a cupboard in a cache on the side of the wall, and some under the floor; that the wife and daughter of the defendant were at the house at the time of the search; that defendant's wife said that Mr. Zolantakis had gone up town, but would be back again for supper; that the witness told defendant's wife to tell her husband to report at the office of Lieutenant Clayton the next morning at 10 o'clock; and that she said she would so inform her husband.

Two of the bottles which were found by the officers in the home of defendant were received in evidence.

Neither at the time of the hearing nor prior thereto was defendant asked to plead, answer, or admit, or deny any charge made against him. Nor was the defendant advised of any charge against him, nor of what the court was about to investigate. Soon after the hearing began defendant's counsel moved that the citation be dismissed for the reason no affidavit or complaint had been filed and defendant was not apprised of any fact or facts or charge that he was expected to meet. The objection was overruled. The attorney for the state asked leave to amend the citation, but the request was denied. Defendant, through his attorney, attempted to cross-examine each of the witnesses called by the state, but the court, upon its own motion, denied the right of cross-examination for the reason, as stated by the court, it did not wish the proceedings to "savor of the dignity of a trial."

Peter Zolantakis was sworn and testified that he was not the defendant in this action, and that he did not reside on Fifth West street, in Salt Lake City, on March 2 and 3, 1926. No attempt was made on the part of the attorney for the state to cross-examine the witness Peter Zolantakis.

At the conclusion of the proceedings the court ordered the suspension of sentence vacated and set aside and the de-

fendant, Peter Zolantakis, imprisoned in the state prison as hereinbefore indicated.

The defendant assigns as error, among others (a) the refusal of the trial court to dismiss the citation for the reason that there was no affidavit or other basis apprising defendant of what facts he was to meet or what charge was made against him; (b) that the court erred in denying defendant the right to cross-examine the witnesses called for the state.

That the trial court had power to suspend sentence, under the provisions of chapter 74, Laws Utah 1923, is clear and is not questioned. The statute above quoted, it will be observed, grants to the trial court broad and comprehensive discretionary powers as to the terms and conditions upon which it may suspend sentence. In the instant case, it will further be observed, the sentence was suspended during the good behavior of the defendant without any reservations. In 16 C. J. 1335, § 4141, the law is stated thus:

"A court having power to make an order suspending the execution of its judgment in criminal cases, necessarily, upon violation of such order, has the power to revoke the same and to enforce the original judgment by commitment; and such right is not impaired or limited by the passing of the term in which such suspension is made. Where, however, the suspension is upon conditions expressed in the judgment, the prisoner has the right to rely upon such conditions, and so long as he complies therewith the suspension will stand."

The case of *Weber* v. *State*, 58 Ohio St. 616, 51 N. E. 116, 41 L. R. A. 472, cited in the footnote, sustains the text.

Similar results are reached in the following cases: *State* v. *Hemler*, 157 La. 227, 102 So. 316; *Ex parte Selig*, 29 N. M. 430, 223 P. 97; *State* v. *Miller*, 122 S. C. 468, 115 S. E. 742; *Ex parte Hamm*, 24 N. M. 33, 172 P. 190, L. R. A. 1918D, 694.

Courts of some jurisdictions seem to take the view that the suspension of sentence is a mere favor or matter of grace and may be revoked by the court at will.

In the absence of statutory authority, in this jurisdiction, district courts do not have inherent power to suspend sentences except for some definite period and for some specific temporary purpose. *People* v. *Black-burn,* 6 Utah, 347, 23 P. 759. Under the statute above quoted trial courts are not given authority to suspend sentences as a matter of favor or grace, but only when "it appears compatible with the public interest." Judgments rendered by courts of competent jurisdiction are almost uniformly held to fix and determine the rights of the parties to proceedings. Indeed, that is the very purpose of a judgment. The writer is unable to find any good reason why an exception should be made in the case of a suspension of sentence. It must be assumed that when the trial court stated the sentence should be suspended during good behavior it meant just what was said, when, as in the instant case, nothing in the sentence indicates otherwise.

The purpose of the law permitting the suspension of sentence is clearly reformatory. If those who are to be reformed cannot implicitly rely upon promises or orders contained in the suspension of sentence, then we may well expect the law to fail in its purpose. Reformation can certainly best be accomplished by fair, consistent, and straightforward treatment of the person sought to be reformed. It would therefore seem, both upon authority and principle, that when a sentence is suspended during good behavior, without reservations, the person whose sentence is thus suspended has a vested right to rely thereon so long as such condition is complied with. The right to personal liberty is one of the most sacred and valuable rights of a citizen, and should not be regarded lightly. The right to personal liberty may be as valuable to one convicted of crime as to one not so convicted, and so long as one complies with the conditions upon which such right is assured by judicial declaration, he may not be deprived of the same. Such right may not be alternatively granted and denied without just cause.

The next question presented and to be determined is whether or not the record in the instant case justifies the conclusions reached in the judgment rendered. It is not contended on behalf of appellant that he is entitled to a jury trial, and it is clear that the provisions of chapter 74, supra, do not contemplate a jury trial to determine whether or not the suspension of a sentence should be vacated. It may well be that where the person sought to be imprisoned denies that he is the defendant in the original action, such person is entitled to a jury trial upon that issue. In this case the person before the court did deny that he was the defendant in the action, but as no point is made upon that ground on this appeal we are not called upon to consider this phase of the case.

In some jurisdictions it is held that a court having jurisdiction is empowered to revoke the suspension of sentence without granting a trial to determine whether or not the condition of the suspension of sentence has been ■ violated. Such, in substance, is the statement of the law in 16 C. J. 1335, § 3142. In the state of New York, where suspension of sentence is regarded as a matter of favor or grace, the court may at will order the suspension of sentence revoked. *People* v. *Trombly,* 173 App. Div. 497, 160 N. Y. S. 67. In Texas, as stated in the syllabus, which reflects the opinion in *Ex parte Lawson,* 76 Tex. Cr. R. 419, 175 S. W. 698, "it is only on final judgment of conviction in another case that suspension of sentence during good behavior can be set aside, and it cannot be done pending appeal from such conviction." In Louisiana, under the provisions of the statutes of that state, the court reached the same result as was reached in the case of *Ex parte Lawson,* supra, in *State* v. *Hemler,* 157 La. 227, 102 So. 316. Other courts have reached conclusions between those two extremes. In this state the question here involved is one of first impression. The statute involved does not point out a method of procedure. The majority of this court are of the

opinion that a person who has a sentence suspended during good behavior, without any limitation, is entitled to a hearing upon the question of whether or not he has complied with the conditions imposed; that such hearing must be according to some well recognized and established rules of judicial procedure; that defendant is entitled to have filed either an affidavit, motion, or other written pleading setting forth the facts relied upon for a revocation of the suspension of sentence; that the defendant should be given an opportunity to answer or plead to the charge made; that a hearing should be had upon the issues joined; and that the defendant as well as the state be given the right of cross-examination. If we are correct in our conclusion that the defendant has a vested right to his personal liberty during good behavior when so ordered without reservation in the original sentence, any proceeding failing in these is error.

It is contended on behalf of the state that the evidence in this case justifies the revocation of the suspension of sentence. Conceding such to be true upon the record before us, still how are we to determine, as a matter of law, what the evidence would have been, had defendant, through his attorney, been given an opportunity to cross-examine the witnesses for the state? In a judicial investigation the right of cross-examination is an absolute right and not a mere privilege of the party against whom the witness is called. It is only after such right has been substantially and fairly exercised that the allowance of further cross-examination becomes discretionary. 5 Jones, Comm. Ev. § 821. The reason for the rule is doubtless the fact that the cross-examination of a witness may not only modify and explain, but it may destroy the evidence in chief. A court is unable in advance to determine what will be the result of cross-examination in a given case. Legal procedure requires that the court hears before it condemns, and in such hearing cross-examination is often as enlightening as is the examination in chief. We are therefore of the opinion that the refusal of the trial court to permit cross-examination of the

state's witness was prejudicial to the rights of the defendant.

The record in this case shows that defendant was arrested before the citation to show cause why the suspension of his sentence should not be revoked was served upon him. It is not made to appear that defendant was advised of any facts relied upon by the state for such revocation until evidence was offered at the time of the hearing. No issue of any fact was before the court for determination. It is therefore difficult to see how the defendant could have been expected to properly resist the revocation of the suspension of sentence, even though he may have had a good defense to any charge of wrongdoing since the sentence was suspended. Timely objection was made to the proceedings, and we are of the opinion that the failure of the trial court to sustain the objections was prejudicial to the rights of the defendant.

We are therefore of the opinion that the judgment appealed from should be and the same is hereby reversed, and the defendant is ordered discharged so far as these proceedings are concerned.

THURMAN, C. J., and STRAUP, J., concur.

CHERRY, J. (dissenting). When the execution of a sentence is suspended, it is not vacated. The judgment itself is not impaired or limited. The time for its execution is merely deferred. While under a suspended sentence, a duly convicted person is not freed from the legal consequences of his guilt. He is merely enjoying a conditional favor, postponing his punishment, which may be withdrawn. When the suspension is revoked the convict is punished for the crime of which he was convicted, and not for violating the terms of his parole. The suspension of a sentence can never be demanded as a matter of legal right. It is granted at the mere will of the court. When granted, it is not held as a vested right, but as a matter of favor or grace. The statute confers upon courts a discretionary power designed to aid

in the reformation and reclamation of convicted persons. By impressing upon the convicted person that he is enjoying a contingent favor, which may be withdrawn or revoked at any time, it is sought to induce or coerce him to amend his ways. The whole force and virtue of the expedient lies in the reserved power of the court to revoke the favor and inflict the penalty. And if this is hedged about with limitations which substantially destroy it, the whole scheme is defeated. The suspension of the sentence is not a fixed and final adjustment amounting to a right to be revoked only upon a violation of the condition upon which it is granted, because the statute expressly declares that "the court may subsequently increase or decrease the probation period and may revoke or modify any *condition* of probation." Clearly, this precludes the claim that the judgment is unenforceable until, after due process of law, it is adjudged that the condition of probation has been violated. The power of the court to revoke is not limited to when the conditions have been violated, but extends to the modification or revocation of the condition itself.

There is nothing in the statute suggesting that the compliance with any condition, or the proof of any grounds, are necessary to authorize the revocation of an order suspending sentence. From the nature of the subject, the whole matter of granting and revoking suspensions must rest in the discretion of the court. This view of the matter finds support in *ex rel., etc.*, v. *Court of Sessions, etc.*, 141 N. Y. 288, 36 N. E. 386, 23 L. R. A. 856, where O'Brien, J., speaking for the court, says:

"The power to suspend the judgment during good behavior, if understood as expressing a condition, upon the compliance with which the offender would be absolutely relieved from all punishment and freed from the power of the court to pass sentence, is open to more doubt. The Legislature cannot authorize the courts to abdicate their own powers and duties or to tie their own hands in such a way that after sentence has been suspended they cannot, when deemed proper, and in the interest of justice, inflict the proper punishment in the exercise of a sound discretion. Nor can the free and untrammeled

exercise of this power or the right to pass sentence according to the discretion of the court be made dependent upon compliance with some condition that would require the court to try a question of fact before it could render the judgment which the law prescribed. The statute must not be understood as conferring any new power. The court may suspend sentence as before, but it can do nothing to preclude itself or its successor from passing the proper sentence whenever such a course appears to be proper. This, we think, is all that the statute intends, and that was the only effect of the judgment. It is a power which the court should possess in furtherance of justice, to be used wisely and discreetly, and it is perhaps creditable to the administration of justice in such cases that while the power has always existed no complaint has been heard of its abuse."

### In 16 C. J. 1335, it is said:

"When sentence has been suspended during good behavior of the defendant, either with or without statutory authority, the court has power to revoke such order and to impose the sentence without granting defendant a trial as to whether or not he has violated such condition."

In *People* v. *Goodrich* (*Sup.*) 149 N. Y. S. 406, the court, in dealing with a revocation of a suspended sentence, and after holding that the trial court did not err in not trying as an issue of fact the question whether the defendant has violated the condition of her discharge, said:

"I think the suspension of judgment in this case was a matter of grace, not of right, to the defendant, that she thereby acquired no vested rights, and the court had the right in its discretion to cancel and revoke the same. In any event, all that was required was to call to its attention facts that satisfied the conscience of the court that the defendant had violated the terms of her parole."

In *People* v. *Trombly*, 173 App. Div. 497, 160 N. Y. S. 67, the suspension of a sentence was revoked when the court "received information" that the conditions of the suspension had not been complied with. In sustaining the revocation the court said:

"It was proper at any time to revoke the order suspending the execution of the sentence, and neither the Legislature nor the courts

have ever attempted to limit this power, except to the discretion of the court."

In *State* v. *Miller,* 122 S. C. 468, 115 S. E. 742, it was decided in a proceeding similar to this that the fact that a rule to show cause was issued without information under oath to support it did not affect the court's jurisdiction to enforce the original sentence, when defendant made formal return and was heard by counsel, and that the order suspending sentence might be revoked without granting the defendant a trial.

In the case before us it is not claimed that the court abused its discretion or acted capriciously or arbitrarily by making the order complained of without sufficient grounds, nor that on the merits the defendant has suffered any substantial injustice. In view of the facts proved, which were not even denied by the appellant, that claim could not be successfully made. The complaint is merely that the court committed error in its procedure.

In exercising the powers conferred by the statute in question from the nature of the subject, courts must necessarily have a large discretion not only in respect of the grounds upon which they act, but in the method or procedure by which they ascertain facts and arrive at conclusions. They are not dealing with specific legal rights and are not bound by the standards of legal procedure which usually control judicial proceedings. This is comprehended within the very generally approved rule that an order suspending sentence may be revoked without granting the defendant a trial upon the facts. It logically follows that courts may ascertain facts upon which to act in any manner they see fit, and act upon them, provided only that their proceedings and conduct on the whole are not capricious or arbitrary or a manifest abuse of discretion. I think the orders appealed from should be affirmed.

GIDEON, J. I concur in the views expressed by Mr. Justice CHERRY.