## DEMMICK v. HARRIS, Warden

No. 6720.   Decided January 16, 1945.   (155 P. 2d 170.)

See 24 C. J. S., *Criminal Law*, sec. 1615. 25 Am. Jur., 159.

*Ray S. McCarthy,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *Herbert F. Smart,* Asst. Atty. Gen., for respondent.

McDONOUGH, Justice.

Appeal from a judgment dismissing petition for writ of habeas corpus and from an order denying any relief thereunder, after hearing in district court. The application for the writ alleges, in substance, the following: Petitioner was found guilty of burglary in the second degree and of being an habitual criminal after trial by jury before the Hon. A. H. Ellett, district judge; and on or about November 28, 1942, was sentenced to an indeterminate term of not less than 15 years imprisonment. However, at the time sentence was pronounced, petitioner was granted a stay of execution to January 4, 1943, and was placed in the custody of the State Adult Parole and Probation Department. On November 30, 1942, he signed the regular form of probation agreement, a copy of which is attached to the petition. It is further alleged that he did not violate the terms of said agreement, and that at the time of "suspension of execution of sentence" the court stated that whether defendant would go to prison would depend upon his conduct; but that on January 4, 1943, the court issued a commitment and committed petitioner to prison without granting him a hearing on whether or

not he had violated "the terms of said parole." A copy of the commitment is attached to the petition.

The commitment recites the conviction and sentence for an indeterminate term of not less than 15 years, a stay of execution to January 4, 1943, and that

"upon recommendation of the State Adult Parole and Probation Department and good cause appearing therefor the court orders the defendant committed pursuant to the judgment and sentence previously entered herein."

The return on the writ filed by the warden of the prison recites that he has custody of the petitioner by authority of a judgment, sentence and commitment issued by and under the signature of the Hon. A. H. Ellett, district judge, dated Janury 5, 1943, a copy of which commitment is attached.

Upon the hearing below appellant introduced evidence which revealed that at the time of passing sentence the judge then presiding, after pronouncing judgment, stated:

"However I am going to give you a stay in this matter and place you with the Adult Board of Probation and Parole."

After inquiring where appellant had been employed, the judge said:

"I will ask Mr. McFadden [the probation agent] to make arrangements to see if the same work can be had. If not, I will ask him to make some arrangements for your work, and you will be left in jail until he calls for you. * * * One of the conditions of your staying out of the penitentiary is that you drink no liquor or beer * * *. If I hear of your drinking at all, I will sign a commitment, * * * you will sign the agreement with Mr. McFadden to report and be under his direction."

Such agreement was subsequently signed by appellant.

Subsequent to the foregoing statements by the court, appellant stated that he thought he would be able to "clear this whole thing up," meaning the charge, "within the next

two or three months," if the judge "would exonerate" him. To which statement the court replied:

"I believe it lies in your power to clear this up. *That is the reason I am not putting you in prison.*" (Italics added)

The judge added that he was convinced that some of those who testified at the trial were as much implicated as appellant, and that he would think a lot more of appellant if he "would come clean with this matter, because I think the first element of being a good citizen is to tell the truth."

It also appears that within a few days after the time of sentence appellant was sent for by the trial judge and had a conversation with the latter. Its import is not shown since the conversation was excluded by the court below. On January 4th, the date to which execution was stayed, appellant went to the judge's chambers where, according to his testimony in this proceeding he told his story as to what were the true facts relative to the criminal transaction of which he was convicted. The judge stated that he did not believe such story and there was nothing left but to send him to prison. Either at that conversation, or at a previous one, appellant had told a different story. Appellant was on that day committed to the county jail. That afternoon the trial judge went to the jail and saw appellant, evidently to find out whether he was willing to tell the truth. Appellant thereupon told a different version of the affair, which was apparently disbelieved, and the commitment to prison issued.

During the habeas corpus proceeding below, the objections of respondent to the admission in evidence of certain exhibits from the files of the Adult Probation and Parole Department were sustained. The offer of proof reveals that such exhibits would indicate that the Department proceeded in the case of Demmick in the same manner as it did in all cases where one convicted of crime is placed on probation. The agreement with such department signed by Demmick, as hereinabove noted, was received. No

evidence was offered to the effect that appellant had violated any of the conditions thereof. Evidence was introduced to show that the department had made no recommendation that commitment issue.

It is appellant's contention that the proceedings below show that Judge Ellett before whom he was tried and convicted intended to and did in effect place petitioner on probation "during good behavior"; that the stay of execution to January 4, 1943, was merely the formal means of expediting that intent and was for the purpose of having appellant report back to the trial judge on the expiration date so that the latter might be advised as to whether appellant had observed the conditions imposed by the court. He further contends that since he was committed to prison without any hearing on the question as to whether he had violated such conditions, the court below erred in not releasing him from the custody of respondent. He cites *State* v. *Zolantakis*, 70 Utah 296, 259 P. 1044, 54 A. L. R. 1463; *Thompson* v. *Harris* (*Demmick* v. *Harris*), 106 Utah 32, 144 P. 2d 761; *Williams* v. *Harris*, 106 Utah 387, 149 P. 2d 640.

The Zolantakis case was decided on appeal from the order revoking the suspension of sentence. Therein we stated [70 Utah 296, 259 P. 1046]:

"In the absence of statutory authority, in this jurisdiction, district courts do not have inherent power to suspend sentences except for some definite period and for some specific temporary purpose * * *. Under the statute * * * trial courts are not given authority to suspend sentences as a matter of favor or grace, but only when 'it appears compatible with the public interest.' "

We also said:

"The purpose of the law permitting suspension of sentence is clearly reformatory. If those who are to be reformed cannot implicitly rely upon promises or orders contained in the suspension of sentences, then we may well expect the law to fail in its purpose. Reformation can certainly best be accomplished by fair, consistent, and straightforward treatment of the person sought to be

reformed. It would therefore seem, both upon authority and principle, that when a sentence is suspended during good behavior, without reservations, the person whose sentence is thus suspended has a vested right to rely thereon so long as such condition is complied with. * * * Such right may not be alternately granted and denied without just cause."

But here we are met by respondent's contention that the use of the writ of habeas corpus is restricted to the correction of jurisdictional errors and errors so gross as in effect to deprive one of constitutional substantive or procedural rights. *Thompson* v. *Harris,* 107 Utah 99, 152 P. 2d 91, opinion on petition for rehearing. We shall assume for the purposes of this case that it would constitute such deprivation of appellant's rights, if Judge Ellett on November 28, the date of sentence, placed appellant on probation during good behavior; and, thereafter revoked such order without notice and hearing. Furthermore, we shall assume—and the proposition must be conceded—that the mere summary summoning of one on probation to the chambers of the sentencing judge to be there cross-examined concerning his conduct either before or after the order granting probation, would fall short of according him the hearing the law prescribes. The primary question, therefore, is: Was appellant, on the date of sentence, granted an indefinite stay of execution and placed on probation during good behavior.

The question must be answered in the negative. The order, itself, specifically makes the stay one until a definite time. Furthermore, the evidence shows that at the time of entering such order the reason, or one of the reasons given, for granting the stay was to give appellant an opportunity to tell the truth relative to the crime of which he was convicted. There can be little doubt that a temporary stay for the purpose of determining the present disposition and mental attitude of the convicted person, before granting an indefinite one is within the discretion of the trial court.

Whether one convicted of crime, and subject to punishment therefor, should be placed on probation is a matter in such court's discretion. It would be but salutary procedure in the exercise of such discretion for a trial judge who is doubtful whether the granting of probation during good behavior is compatible with the public interest, to make such investigation as his judgment dictates as to the attitudes of the person convicted. Nor do we see anything irregular in the court's action in this case in requiring compliance with conditions usually imposed on those placed on probation during good behavior, as a condition to the keeping in force of the stay order until the date of its expiration. The appellant, it appears from the record, could not have been misled thereby. Indeed the record below reveals that what in truth shocked appellant's sense of justice was that he was unable to tell a story which the sentencing judge would believe. However, the burden of persuasion was upon him; and the one to be persuaded was the judge in whose power it lay to grant an additional stay of execution; not the court sitting below in this proceeding, nor this court on appeal.

We find no reversible error in the record. Judgment affirmed.

TURNER, WADE, and WOLFE, JJ., concur.

LARSON, Chief Justice (concurring specially).

The record is definite that sentence was imposed upon Demmick on November 28, 1942, and a stay of execution was granted until January 4, 1943. Such stay of execution operated only to delay commitment until the day certain fixed in the stay. At the expiration of that time, commitment issues as of course, unless the court by order grants a further stay. The evidence now before us seeking to impugn the record is not such as to require the trial court in this proceeding to have concluded otherwise than it did, nor to justify us in reversing the trial court.

For this reason, and this reason alone, I concur in affirming the judgment.