## CHRISTIANSEN v. HARRIS.

No. 6888.   Decided November 20, 1945.   (163 P. 2d 314.)

See 16 C. J. S., Constitutional Law, sec. 567; 12 Am. Jur. 258.

*Harry H. Christiansen,* pro se.

*Grover A. Giles,* Atty. Gen., and *W. Stanford Wagstaff,* Asst. Atty. Gen., for respondent.

LARSON, Chief Justice.

By the Habeas Corpus Act we have before us the question as to the procedural formalities necessary to sustain a revocation of probation by the District Court under the provisions of Sec. 105-36-17, U. C. A. 1943, as amended by Chapter 24, Laws of Utah 1943. The question arises out of some statements made in *State* v. *Zolantakis,* 70 Utah 296, 259 P. 1044, 1047, 54 A. L. R. 1463. Petitioner, an inmate of the State prison, by petition for writ of habeas corpus, charges that he is illegally restrained of his liberty because the proceedings by which he was committed to prison violated the due process clause of Sec. 7 of Article I of the state constitution. To the writ the Warden filed a long and detailed return setting forth the full history and proceedings in court which led to the revocation of probation and issuance of commitment. In answer to the return the petitioner admitted the proceedings were correctly set forth in the return and relies upon the legal insufficiency of a hearing such as shown to constitute due process. We outline the proceeding before the District Court.

On May 2, 1938, petitioner pleaded guilty to a felony sentence deferred two weeks to permit investigation by the Department of Adult Probation Parole; on May 16th, petitioner was sentenced to the state prison for a term of one to twenty years, and execution suspended for one year provided petitioner did not violate the law and "report to this court at the opening day of each and every term during

the period of one year as above stated." The next term of court opened on September 6, 1938 and pursuant to the order of May 16th, petitioner was present to make his report which was done in open court. He frankly admitted to the court that his conduct on probation was not favorable; that he had pleaded guilty to the offense of intoxication; that he had knowingly issued several checks without funds; and "I have never lived up to the expectations of the court and myself and everyone else * * * I have not lived up to my promise." No witnesses were called, nor evidence taken except petitioner's own statement. At the conclusion of the hearing the order of stay of execution was set aside and petitioner was committed to prison.

Petitioner contends that he was denied due process of law in that:

(1) No citation was issued by the court requiring defendant to appear and then and there show cause why the suspended sentence should not be vacated and set aside.

(2) No affidavit, complaint, information or other writing having been made and filed charging the defendant with any lack of good behavior or otherwise.

(3) Neither at the time defendant appeared in court nor prior thereto was defendant asked to plead; answer, or admit or deny any charge made against him.

(4) Nor was defendant advised of any charge against him, or apprised of any fact or facts or charge that he was expected to meet.

(5) And there was no finding of fact.

The argument centers largely on the Zolantakis case, wherein it is said:

"A person who has a sentence suspended during good behavior, without any limitations, is entitled to a hearing upon the question of whether or not he has complied with the conditions imposed; that such hearing must be according to some well recognized and established rules of judicial procedure; that defendant is entitled to have filed either an affidavit, motion, or other written pleading, setting

forth the facts relied upon for a revocation of the suspension of sentence; that defendant should be given an opportunity to answer or plead to the charge made; that a hearing should be had upon the issue joined; and that defendant as well as the state be given the right of cross-examination."

There is an ever present tendency to expand such statements to apply to cases wherein the facts are entirely different. While we are in accord with the rules laid down in the Zolantakis case, we call attention to the fact that statements like the one quoted are by that opinion itself limited to similar situations. We are not inclined to expand the force of such holdings beyond what the court intended when the case was decided. That case stands for the following propositions: that a person upon probation without limitation has a vested right in his personal liberty as long as he does not violate the conditions upon which that liberty was granted; that when a person is on probation under such indefinite terms as "during good behavior" or "conducting himself as a good citizen" where reasonable men could differ as to whether any given act or conduct was or was not a violation, then such person is entitled to a definite statement, preferably in writing, as to the conduct ascribed to him and which it is claimed violated the general indefinite limitation placed upon his conduct. Otherwise he would be unable to know until the hearing the kind or nature of acts against which he must defend himself. When, however, the terms of probation are so definite as to acts from which the person must refrain, or as to things he must perform, that reasonable men would not differ as to whether the performance or non-performance of the act was a violation of the condition, the need for written specifications of the claimed violations is not so apparent, since the limited acts which could constitute a violation are specified in the probation terms.

Nor is it necessary that warrant, citation or summons issue to bring the person into court. If he is present and given opportunity to be heard, he cannot complain of lack of formality in process. Process is only for the

purpose of giving him notice so he can be present and present his side of the question.

The Zolantakis case does not require that probationer be required to plead or that he file formal or written answers. It merely requires that he be given a proper opportunity to admit, deny or avoid the acts or conduct charged against him, and that as to any such acts which he denies or otherwise defends against, he be given a hearing with a fair opportunity to be represented by counsel, to be heard, to present his evidence, and to cross examine the witnesses against him.

At the outset we call attention to the fact pointed out by Mr. Justice McDonough, speaking for this court in *Demmick* v. *Harris, Warden,* 107 Utah 471, 155 P. 2d 170, that the Zolintakis case was decided on appeal from the order revoking the probation and not on habeas corpus proceedings. The present case is much narrower in its scope. Here we are concerned only with questions of jurisdiction. Due process of law may be a jurisdictional question but we review the matter only to the extent of determining whether the court had jurisdiction of the subject matter of the action and of the person of defendant and in proper cases we may determine whether the proceedings were such as to deprive one of due process. If the court had this dual jurisdiction, that concludes the matter. In proceedings such as this we do not review questions of error. The phrase "due process of law" apparently originated in our judicial parlance with Lord Coke, who in construing the language of Magna Charta "That no man shall be taken or imprisoned—or deprived of life, liberty or property but by the judgment of his peers or the law of the land" said that the phrase, "law of the land" meant "due process of law," which definition is the language used in our constitution. Many attempts have been made to further define "due process" but they all resolve into the thought that a party shall have his day in court—that is each party shall have the right to a hearing before a competent court, with the privilege of being heard and introduc-

ing evidence to establish his cause or his defense, after which comes judgment upon the record thus made. Says the standard definition: It "hears before it condemns, proceeds upon inquiry, and renders judgment only after trial." The term "law of the land" embraces all legal and equitable rules which define human rights and duties, and provides for their protection and enforcement, both as between the state and its citizen, and between man and man. And the "due process" of law includes the steps essential under such rules to deprive a person of life, or liberty. It covers the means and methods that are prescribed or may be employed to accomplish the purposes of the law. *Jenkins* v. *Ballantyne*, 8 Utah 245, 30 P. 760, 16 L. R. A. 689. Normally we think of "due process of law" as requiring judicial action, but "due process' is not necessarily judicial action. *People* v. *Hasbrouck*, 11 Utah 291, 39 P. 918; *Ex parte Wall*, 107 U. S. 265, 2 S. Ct. 569, 27 L. Ed. 552. In proper cases the purposes of the law, especially as to property, may be effected by executive or administrative action, and still be valid if they meet the requirements of due process. In the trial of criminal cases the statutes prescribe certain rules of procedure, which must be substantially complied with to keep the proceedings within the due processes of the law. A somewhat different set of rules are prescribed in civil cases, and in special proceedings. Some rules affecting all types, are not found in the statutes, but in that great basic body of the law commonly known as the decisions or rules of the courts. But all these methods and means provided for the protection and enforcement of human rights have the same basic requirements—that no party can be affected by such action, until his legal rights have been the subject of an inquiry by a person or body authorized by law to determine such rights, of which inquiry the party has due notice, and at which he had an opportunity to be heard and to give evidence as to his rights or defenses. In depriving a person of life or liberty, the essentials of due process are: (a) the existence of a competent person, body, or agency authorized by law to determine the questions;

(b) an inquiry into the merits of the questions by such person, body or agency; (c) notice to the person of the inauguration and purpose of the inquiry and the time at which such person should appear if he wishes to be heard; (d) right to appear in person or by counsel; (e) fair opportunity to submit evidence, examine and cross-examine witnesses; (f) judgment to be rendered upon the record thus made. In the absence of statute laying down other or more specific requirements, the above conditions meet the demands of due process. In the absence of specific provisions to the contrary, due process does not require that any or all of these requirements must be in writing or in any particular form. In the interests of orderly procedure and certainty as to its proceedings and action taken, any legally constituted body or agency should as far as practical have written records of all proceedings before it, except where otherwise provided by law.

Did the procedings in the instant case meet the requirements of due process? That the District Court of San Pete County was a body created and authorized by law to sentence the petitioner, to suspend execution of that sentence and place him on probation, and to revoke such probation for cause and commit him to prison is not and cannot be questioned.

Thus requirement (a), supra, is fully met. As to (b) it is alleged by the defendant Warden, in his return to the writ, that an inquiry was conducted in open court as to the conduct of petitioner during his period on probation, and a complete record of those proceedings are incorporated in the return. Petitioner admits the correctness of the transcript and that the proceedings were held as shown by such record. Thus the second requirement is satisfied. The record discloses, and the applicant admits that when placed on probation, he was instructed in open court by the judge thereof that as one condition of probation he was to report to the court in open court on the opening day of each succeeding term as to whether, and to what extent, he was living up to the conditions on which he was granted probation;

and that if his conduct in such respects was not satisfactory to the court, his probation would be revoked and commitment would issue; that pursuant to such order he appeared in open court on the opening day of the next term for the purpose of a report and inquiry into his conduct while so on parole. So he admits requirement (c) was fully complied with.

Appearing in person, and not desiring counsel, he was afforded full and free opportunity to talk and present his report and defend his conduct. No question arises therefore as to condition (d). As to (e) the matter of evidence, petitioner himself was the only witness. He told his own story, was questioned by the judge, and in conclusion was repeatedly asked if he could offer any further evidence or explanations of his conduct. He freely admitted that he had in many ways violated the conditions of his probation and had committed a number of offenses against the law during probation; and that he had no justifiable excuse for what he had done. In this regard the proceedings certainly meet the requirements of condition (e) of due process.

After all these proceedings were had, and based upon the statements and admissions of petitioner made at such hearing in open court, judgment was pronounced (condition (f)) which was strictly in accord with the provisions of the statute, probation was set aside, and commitment issued on the sentence theretofore imposed.

It follows that the proceedings revoking probation and committing petitioner to prison did not deprive petitioner of due process of law. The writ is quashed and petitioner remanded to the custody of the warden.

TURNER, J., concurs.

WADE, Justice (concurring in the result.)

I concur with the holding that no error was committed on the ground that plaintiff came into court and told his story and from the facts disclosed thereby the court was amply justified in revoking his probation and committing him to

the state prison. Under such circumstances no further trial, hearing or other proceedings is necessary in order to constitute due process of law. The rules stated in the Zolintakis case apply only where there is controversy as to the facts upon which the revocation of the probation is based.

McDONOUGH, J., concurs for the reason stated by WADE, J.

WOLFE, Justice (concurring in the result).

Heretofore in the case of *McCoy* v. *Harris*, 108 Utah 407, 160 P. 2d 721, I have expressed my doubts as to whether the case of *State* v. *Zolintakis*, 70 Utah 296, 259 P. 1044, 54 A. L.R. 1463, was correctly decided. It is quite probable that when the legislature gave a district judge discretion to suspend sentence after conviction, it had enough faith in his ability and judgment to give him absolute discretion to determine when the probation should be revoked. The Zolintakis case seems to have treated a man convicted of crime whose liberty is circumscribed and conditioned while on probation as entitled to the same procedural due process in the determination of whether he has violated the condions of his probation as he would be entitled to when on trial for the commission of a crime. I thought the philosophy back of the case of *McCoy* v. *Harris* was otherwise. In probation as in parol the defendant is convicted and has only conditional liberty. When a law intended to benefit a convicted defendant is so construed as to require formal pleadings, right of counsel, formal hearing with all the judicial trimmings and right of appeal just to insure against the possible rare case of arbitrary action by a judge, it goes a long way to discourage a judge from granting probation and defeats the salutary purposes of the act. A judge may feel in a doubtful case that if he tries probation, the convicted defendant will be put in such strategic position as to virtually defeat needed revocation. I have expressed my willingness to go along with the Zolintakis case if it is construed only as rquiring that before probation is revoked

the probationer be given a hearing on the question of whether he has violated the conditions of his probation. I do not think he need be notified in writing as to the facts relied upon for revocation, nor that he is entitled to counsel, nor that the hearing be formal. A hearing implies a right to present relevant evidence. I think the right to examine and cross-examine witnesses is largely in such type of case in the discretion of the judge who granted probation. The intent of the law was to give the judge a supervisory jurisdiction over the probation and if we are to adhere to the holding that the defendant is entitled to a hearing, we should hold that it is in the nature of an inquiry, the nature and extent of which is largely in the discretion of the judge. The judge could call in the probationer, question him on matters which were brought to the judge's notice by others. Whether the probationer should be confronted by those witnesses is within the choice of the judge. The inquiry need not extend beyond an informal hearing and certainly need not be expanded into a formal trial. It is not to be presumed that the judge will be arbitrary. It is to be presumed that he will act on a reasonable factual basis. The judge had absolute discretion to grant or refuse probation. If we hold that he has a limited discretion in revoking, I think we are going beyond what the statute intended but certainly with a right of appeal, the rights of the probationer which we have judicially given him are sufficiently protected without holding that he is entitled to all of the formality and procedure which due process may require in the case of a man charged but not convicted of a crime. It seems to me the appeal should be limited to determine only whether the trial judge was arbitrary in revoking the suspension. And if he accorded a hearing on reasonable notice and reasonable opportunity to the defendant to present his side of the story, the judge could not be said to have been arbitrary at least in regard to procedure.

The opinion of the Chief Justice seems to me even to add to the requirements laid down in the Zolintakis case. It is unnecessary in this case to catalogue the essentials of due

process. In this case the defendant himself admitted to the judge and admitted before us·on the hearing on the writ of habeas corpus, that he had admitted to the judge that he had broken the conditions of his parole. There was, therefore, no issue or question necessitating a hearing. That is all there is to this case.

Perhaps I should add that it would be more accurate to say that "Due process of law may involve a jurisdictional question  *  *  *" rather than that it "may be a jurisdictional question." Failure to obtain jurisdiction may be because the requirements of due process have not been complied with but once having jurisdiction there may be failure to grant due process which failure does not unhorse the court of jurisdiction nor involve a jurisdictional question. But if due process has not been followed in the attempt to gain jurisdiction, jurisdiction may never have been obtained. The limited questions considered in habeas corpus proceedings in respect to prisoners were fully discussed by this court in the case of *Thompson* v. *Harris,* 106 Utah 32, 144 P. 2d 761, on petition for rehearing 107 Utah 99, 152 P. 2d 91.

However, I heartily concur in the result reached in the opinion.