R. Lamar BAIRD, a resident of the State of Utah for and on behalf of all other residents similarly situated, Plaintiff and Respondent,

v.

STATE of Utah, State Industrial Commission, Occupational Safety and Health Division, Utah Occupational Safety and Health Review Commission, Defendants and Appellants.

No. 14984.

Supreme Court of Utah.

Jan. 9, 1978.

Robert B. Hansen, Atty. Gen., Harry E. McCoy II, Spec. Asst. Atty. Gen., James B. Lee, Kent W. Winterholler of Parsons, Behle & Latimer, Salt Lake City, for defendants and appellants.

Loren D. Martin, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Before us is a judgment of the District Court declaring Chapter 9, Title 35, as enacted 1973, U.C.A.1953, unconstitutional. Based on the record before us, the trial court should have dismissed this action for declaratory judgment ex mero motu. It should have done so on the ground it lacked jurisdiction to render an advisory opinion. We reverse. No costs awarded.

Plaintiff merely alleged that he was employed and employing within the geographical confines of Utah and that he was a member of a class of persons with complaints similar to his. The alleged adverse actions of defendant consisted of the creation, administration, and enforcement of a legislative act. The allegations concerning

the unconstitutionality of the act were all pleaded in the abstract. There were no concrete facts pleaded indicating any specific injury sustained or threatened to plaintiff personally. There were no allegations that plaintiff had sustained a particularized injury that set him apart from the public generally and would give him standing to challenge the constitutionality of the act.

In *Lyon v. Bateman,*[1] this Court stated that while statutes authorizing courts to render declaratory relief should be liberally construed, the courts must, nevertheless, operate within the constitutional and statutory powers and duties imposed upon them. The courts are not a forum for hearing academic contentions or rendering advisory opinions. To maintain an action for declaratory relief, plaintiff must show that the justiciable and jurisdictional elements requisite in ordinary actions are present, for a judgment can be rendered only in a real controversy between adverse parties.

. . . Generally, courts have held that the conditions which must exist before a declaratory judgment action can be maintained are: (1) a justiciable controversy; (2) the interests of the parties must be adverse; (3) the party seeking such relief must have a legally protectible interest in the controversy; and (4) the issues between the parties involved must be ripe for judicial determination.

To entertain an action for declaratory relief, there must be a justiciable controversy, for the courts do not give advisory opinions upon abstract questions.[2] The use of the term "rights, status and other legal relations" in the declaratory judgment statute (§ 78–33–2, U.C.A.1953) relates to a justiciable controversy where there is an actual conflict between interested parties asserting adverse claims on an accrued state of facts as opposed to a hypothetical state of facts.[3]

1. 119 Utah 434, 439, 228 P.2d 818, 820 (1951).

2. 1 Anderson, Declaratory Judgments (2d Ed.), § 9, pp. 38, 44.

3. 1 Anderson, Declaratory Judgments (2d Ed.), 1959 Supp. § 9, p. 13.

When it is ascertained that there is no jurisdiction in the court because of the absence of a justiciable controversy, then the court can go no further, and its immediate duty is to dismiss the action, and jurisdiction cannot be conferred by consent or any other act of the parties.

A Declaratory Judgment Statute cannot be so construed as to authorize the courts to deliver advisory opinions or pronounce judgments on abstract questions, but there must be the invariable justiciable controversy present in such cases.

The Declaratory Judgment Statute recognizes the constitutional limitations upon the courts to determine only cases and controversies.[4]

The courts have·no jurisdiction to render a declaratory judgment in the absence of a justiciable or actual controversy. A mere general contention between parties, which has not been formulated into a definite controversy, does not warrant declaratory relief. For an adjudication, concrete legal issues must be present—not abstractions, as is required in other fields as well as declaratory judgments. ". . . Judicial adherence to the doctrine of separation of powers preserves the courts for the decision of issues between litigants capable of effective determination."[5]

A justiciable controversy authorizing entry of a declaratory judgment is one wherein the plaintiff is possessed of a protectible interest at law or in equity and the right to a judgment, and the judgment, when pronounced, must be such as would give specific relief.[6]

In order to obtain adjudication of an issue with respect to the validity of a statute in a declaratory action it is necessary that there be presented to the court concrete legal issues tendered in actual cases, and abstractions or the seeking of an advisory opinion or the presenting of a non-justiciable controversy, or the raising of a mere moot question will not enable a court, state or federal, to pass upon the constitutionality of statute.[7]

A party seeking a declaration of the constitutionality of a statute must have a real interest therein as against his adversary, whose rights and contentions must be opposition to those of the plaintiff. A party to whom a statute is inapplicable cannot question its constitutionality by seeking a declaration of rights.[8]

The general rule is applicable that a party having only such interèst as the public generally cannot maintain an action. In order to pass upon the validity of a statute, the proceeding must be initiated by one whose special interest is affected, and it must be a civil or property right that is so affected.[9]

The necessity of alleging in the pleading a justiciable controversy is regarded as of such importance as to require the court to raise the question of its own motion, if the parties neglect or fail to do so.[10] A plaintiff may seek and obtain a declaration as to whether a statute is constitutional by averring in his pleading the grounds upon which he will be directly damaged in his person or property by its enforcement; by alleging facts indicating how he will be damaged by its enforcement; that defendant is enforcing such statute or has a duty or ability to enforce it; and the enforcement will impinge upon plaintiff's legal or constitutional rights. A complaint is insufficient which merely challenges the constitutionality of a statute, without in some way indicating that plaintiff will be affected by its operation or is subject to its terms and provisions.[11]

4. 1 Anderson, Declaratory Judgments (2d Ed.), § 9, pp. 49–50.

5. Id., § 16, pp. 65–66.

6. Id., § 17, p. 67.

7. Id., § 18, p. 68.

8. Id., § 159, pp. 302–303.

9. Id., § 162, pp. 313, 314.

10. Id., § 258, pp. 605–606.

11. Id., § 291, p. 676.

Did plaintiff's allegation that he was employed and employing constitute a sufficient basis to give him standing to challenge the constitutionality of the act?

. . . The law is that one who is regulated lacks standing unless he can show an interest that is adversely affected.[12]

To invoke judicial power to determine the validity of executive or legislative action, claimant must show that he has sustained or is immediately in danger of sustaining a direct injury as a result of that action. It is insufficient to assert a general interest he shares in common with all members of the public, viz., a generalized grievance.[13]

To grant standing to a litigant, who cannot distinguish himself from all citizens, would be a significant inroad on the representative form of government, and cast the courts in the role of supervising the coordinate branches of government. It would convert the judiciary into an open forum for the resolution of political and ideological disputes about the performance of government.[14]

Plaintiff alleged the act combined in one agency, legislative, executive, and judicial authority contrary to Article V, Sec. 1, Constitution of Utah. Specifically, he claimed this combination constituted a violation of the fundamental principles of free government, viz., the doctrine of separation of powers.

In his allegations, plaintiff neither asserted a legally protectible interest in the subject matter of the action nor did he plead any facts indicating he would be directly affected by enforcement of the act.

The wrong of which he complained was public in character, and his complaint disclosed no special injury affecting him differently from other citizens. He, therefore, had no standing to urge the unlawfulness of the governmental action. It is not the duty of this Court to sit in judgment upon the action of the legislative branch of government, except when a litigant claims to be adversely affected on a particular ground by a legislative act.[15]

Plaintiff further alleged the act denied equal protection of the law, in that it conferred on the administrator authority to grant a variance, viz., he has discretion to determine whether the laws or rules shall apply to a particular person. In his complaint, plaintiff alleged the act was designed to circumvent the restrictions imposed upon governmental activity associated with criminal investigations and procedures by denominating the penalties for violations of the act as "civil assessments." Plaintiff asserted the act thus deprived an "accused" of a panoply of rights accorded in a criminal action, e. g., trial by jury, search and seizure only pursuant to a warrant, right of confrontation, proof beyond a reasonable doubt, and the right against self-incrimination. Plaintiff asserted the act deprived an accused of life, liberty, or property without due process of law.

Plaintiff may assert only his own legal rights. He may not base his claim upon the legal rights of third parties. The denial of equal rights can be urged only by those who can show they belong to the alleged discriminated class. An asserted violation of due process can be urged only by those who claim an impairment of their

**12.** Davis, Administrative Law of the Seventies, 1977 Supp., § 22.00–5, p. 177.

**13.** *United States v. Richardson,* 418 U.S. 166, 177–180, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974).

**14.** *United States v. Richardson,* note 13, supra, concurring opinion Justice Powell, 418 U.S. 188–192, 94 S.Ct. 2940.

**15.** *Eastham v. Public Employees' Retirement Ass'n Bd.,* 89 N.M. 399, 553 P.2d 679 (1976); *De Grief v. City of Seattle,* 50 Wash.2d 1, 297 P.2d 940 (1956); *Greer v. Lewiston Golf &*

*Country Club, Inc.,* 81 Idaho 393, 342 P.2d 719 (1959); *Bayly Manufacturing Co. v. Department of Employment,* 155 Colo. 433, 395 P.2d 216 (1964); *Patton v. Fortuna Corporation,* 68 N.M. 40, 357 P.2d 1090 (1960); *State v. Human Relations Research Foundation,* 64 Wash.2d 262, 391 P.2d 513 (1964); *Eacret v. Holmes,* 215 Or. 121, 333 P.2d 741 (1958); 174 A.L.R. 549, Anno: Interest necessary to maintenance of declaratory determination of statute or ordinance, Secs. 2, p. 551 and 11, p. 564.

rights in the application of the statute to them. Plaintiff's claims are presented as abstract propositions; he does not allege he has been denied these rights by enforcement of the act. Challenges such as these may only be urged by those whose rights are impaired by the contested legislation.[16]

 Plaintiff alleged the act improperly delegated legislative power in violation of Article VI, Sec. 1, Constitution of Utah. He asserted the legislature did not establish sufficient standards to guide the commission in the exercise of its rule-making power; that the act permitted a federal agency to make rules for the State of Utah; and the discretionary authority granted in making civil assessments constituted a legislative function which could not be delegated.[17] He further alleged the grant of quasi-judicial powers to the Review Commission, was, in fact, a delegation of judicial authority in violation of Article VIII, Sec. 1, Constitution of Utah.

Section 35–9–6(6), provides that any person adversely affected by a standard issued by the commission may file a petition challenging its validity with the District Court for judicial review. Section 35–9–11(1), provides for judicial review of any order, citation or decree heard by the commission in accordance with Secs. 35–1–19 through 35–1–40, U.C.A.1953. Section 35–1–34 provides for an action in the District Court to set aside, amend, or vacate any order of the commission, on the ground that the order is unreasonable or unlawful.

Where an appeal from an action of an administrative body is provided by statute, a remedy by way of declaratory judgment will be denied.[18] The proper procedure to challenge the statute and the administration thereof is by judicial review after final administrative action has been taken.[19]

This extended opinion has attempted to illustrate the succinct statement in *Cranston v. Thomson* : [20]

. . . Actually the requests presented by the three complaints were for advisory opinions on multifaceted matters, answers to which could scarcely fail to proliferate rather than resolve controversy.

WILKINS and HALL, JJ., concur.

ELLETT, Chief Justice: (concurring in the result).

There might be merit to the prevailing opinion if the trial judge had ruled that the respondent did not have standing to bring the action. Had he done so, the complaint could have been amended to show the right to bring the action. The allegations made were that the respondent was an employer in Utah and is subject to the OSHA Act which is being unlawfully administered and enforced; and that he is a member of a class of people who have a joint or common right and complaint against the appellants. In the prayer of the complaint, the respondent asked that all penalties heretofore imposed and all assessments made be refunded. While respondent in his complaint did not specifically state that he had been amerced or that agents of the appellants had trespassed on his property; nevertheless, counsel for respondent, in arguing the case before us, assured us that such was the fact; and the statement was not challenged or denied by counsel for appellants.

The appellants made no contention in their answer that respondent had no standing to bring the action, nor did the respondent, the appellants, or the amicus curiae even so much as advert to the issue upon which the prevailing opinion takes refuge.

---

16. *Kelly v. Silver*, 25 Or.App. 441, 549 P.2d 1134 (1976); *State v. Hines*, 78 N.M. 471, 432 P.2d 827 (1967); *American Metal Climax, Inc. v. Claimant of Butler*, 188 Colo. 116, 532 P.2d 951 (1975); *Budd v. Bishop*, Wyo., 543 P.2d 368 (1975).

17. *Tite v. State Tax Commission*, 89 Utah 404, 416–418, 57 P.2d 734 (1936).

18. 1 Anderson, Declaratory Judgments (2d Ed.) § 201, p. 418.

19. *Colorado Department of Revenue v. District Court In And For County of Adams*, 172 Colo. 144, 470 P.2d 864 (1970).

20. Wyo., 530 P.2d 726, 730 (1975).

All parties desire us to inform them whether or not the OSHA Act is constitutional.

The lower court ruled that the act was unconstitutional in its entirety. The prevailing opinion reverses the case and states that the lower court should have dismissed the case ex mero motu.[1] This the court did not do.

We should explain why we reverse the holding of the trial court more fully than does the main opinion. The case should be remanded where the respondent could be permitted to amend to show that he has standing to maintain the action. That would also enable the appellants to know whether the act is good or bad. Although the holding of the main opinion is that the judgment is reversed, it appears from the reasons given therefor that it may simply be because of lack of standing and not because the act is constitutional. I, therefore, desire to explain my reasons for reversing the judgment.

This appeal is from a memorandum decision of a district court judge holding the Utah Occupational Safety and Health Act of 1973 to be unconstitutional.[2] Hereafter, unless otherwise noted, all references will be to Title 35, Chapter 9 of the Utah Code.

One of the declared purposes of the act was to provide a coordinated state plan for implementation, establishment, and enforcement of occupational safety and health standards as effective as the Federal Williams-Steiger Occupational Safety and Health Act of 1970. In attempting to accomplish the stated purpose, the act sets out a statutory design that is almost identical to the federal act. Section 18(b) of OSHA, 29 U.S.C.A. § 667(b) (1975) allows states, under certain specified criteria:

. . . to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated . . . . .

As the declaration of the Utah Legislature contained in Section 2(2) of the act, *supra*, indicates, the act was enacted so as to allow Utah to develop and enforce occupational safety and health standards as per Section 18(b) of OSHA, *supra*. It follows that if the act is virtually identical in terms of its administration and enforcement of occupational safety and health standards to OSHA, and OSHA does not violate the federal constitution, then the act likewise is not violative of the Utah State Constitution.

OSHA has been challenged on various constitutional grounds in a number of federal courts, including the United States Supreme Court. With one exception those challenges have been uniformly rejected.

In *Atlas Roofing Co. v. OSHRC*,[3] the Fifth Circuit Court of Appeals considered the issue as to whether or not the civil penalty of OSHA[4] was a penal sanction protected by the Sixth Amendment to the federal constitution. In holding that it was not a penalty, that court said:

. . . The focus of the statute—the control of job site safety practices and health conditions—has a demonstrable and legitimate government concern. The fact that the civil enforcement sanctions are inherently disabilities does not alter the nature of the Congressional purpose. And finally the Congressional purpose carefully to establish both civil and criminal sanctions and distinguishable procedures for imposing and reviewing them eliminate any question of Congressional intent. As Judge Friendly puts it . . .

'When Congress has characterized the remedy as civil and the only consequence of a judgment for the Government is a money penalty, the courts have taken Congress at its word.'

---

1. On its own motion without request from either party.

2. Title 35, Chap. 9, U.C.A., 1953, adopted by Laws of Utah, 1973, Chap. 69.

3. 518 F.2d 990, 1011 (5th Cir. 1975).

4. See 17 OSHA, 29 U.S.C.A. § 666 (1975).

In *Untermyer v. State Tax Commission, et al.,*[5] our Court held that Article I, Sec. 7 of the Utah State Constitution was substantially the same as the Fifth and Fourteenth Amendments to the federal constitution, and that decisions of the U.S. Supreme Court on the "due process" clauses of the federal constitution would be highly persuasive as to the application of the due process clause of our own state constitution.[6]

The Utah OSHA Act is summarized as follows:

(1) The act imposes the statutory duty upon employers to avoid maintaining unsafe or unhealthy working conditions and empowers the Industrial Commission, through the Administrator of the Division, to promulgate safety and health standards. Two remedies are provided that permit the Division, proceeding before the Occupational Safety and Health Review Commission, (a) to obtain abatement orders requiring the correction of unsafe working conditions, and (b) to impose civil penalties on any employer maintaining an unsafe working condition.

(2) Under the act, Division inspectors are authorized to conduct reasonable safety and health inspections of an employer's premises. (35–9–8(1)). If, upon a proper inspection a violation is discovered, the inspector may issue a citation to the employer fixing a reasonable time for abatement of such violation and proposing a civil assessment (35–9–9(1), 35–9–10(1)). Such proposed assessments may range from nothing for a nonserious violation, to not more than $1,000 for a serious violation up to a maximum of $10,000 for willful or repeated violations (35–9–21).

(3) If a cited employer desires to contest the assessment or abatement order, he may do so by notifying the Administrator of the Division within thirty days, in which event the abatement order is automatically stayed (35–9–10(2)).

(4) An evidentiary hearing is then held before a hearing examiner appointed by the Occupational Safety and Health Review Commission, (the "Review Commission") (35–9–12(6)). The Review Commission consists of three members, appointed for three-year terms, each of whom is appointed by the Governor with the consent of the Utah State Senate, and each of whom is selected upon the basis of his experience and competence in the field of occupational safety and health (35–9–12(1)). At the evidentiary hearing the burden is upon the Division to establish the elements of any alleged violation, the propriety of the proposed abatement order, and the appropriateness of the proposed penalty; and the hearing examiner is empowered to affirm, modify, or vacate any or all of these items. The hearing examiner's decision becomes the final order of the Review Commission unless a petition for review is filed with the Review Commission (35–9–12; 35–1–82.52 and 82.53).

(5) Final orders and decisions of the Review Commission are subject to a trial de novo in an appropriate Utah District Court and to review thereafter by the Utah Supreme Court (35–9–11(1); 35–1–34 through 35–1–36).

As is shown by the above-stated outline of the salient and relevant provisions contained in the act, the act provides that any employer served with a citation and proposed assessment have an opportunity to be heard in an administrative, adjudicatory hearing where the Division bears the responsibility and burden of showing a violation of the act. That hearing is conducted

---

**5.** 102 Utah 214, 129 P.2d 881 (1942).

**6.** See the following U.S. Supreme Court cases: *U. S. v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) where an unannounced warrantless search of a locked storeroom under provisions of the Gun Control Act was held to be valid; *Wyman, Commissioner of New York Department of Social Services v. James,* 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971) wherein the U.S. Supreme Court held that a New York statute requiring a recipient of funds under the A.F.D.C. (Aid for Dependent Children) to permit agents of the commissioner to enter without warrants and inspect the home, did not violate the proscription of the Fourth Amendment.

before a hearing examiner who is appointed by the Review Commission and who must conduct such as per the evidentiary standards of the Utah Code (35÷1–88); and, further, is required to make findings of fact, conclusions of law, and a recommended order. In addition thereof, such hearing must be a hearing of record, which record must be transmitted as part of the hearing examiner's submission to the Review Commission as well as to the district court if the proceedings are carried that far (35–9–12(6) and 35–1–34).

As to the due process requirement, the act complies with constitutional provisions. The requirements of due process were set out in the case of *Christiansen v. Harris*[7] as follows:

. . . Many attempts have been made to further define 'due process' but they all resolve into the thought that a party shall have his day in court—that is each party shall have the right to a hearing before a competent court, with the privilege of being heard and introducing evidence to establish his cause or his defense, after which comes judgment upon the record thus made. Says the standard definition: It 'hears before it condemns, proceeds upon inquiry, and renders judgment only after trial.' . . .

The trial court erred in holding that the act violated the due process clause of the constitution.

The trial court also held that the act authorized the Occupational Safety and Health Division to enact its own laws, to search without warrant, to instigate its own prosecutions for "believed" violations, and to conduct its own hearings and mete out punishments, all of which constituted a violation of the constitutional requirement of the separation of powers.

The act provides for the promulgation by the Commission of any national consensus standard, any adopted federal standard, or any adopted Utah standard unless such standard would not result in improved safety or health measures. The administrator, with the advice of the Advisory Council, may also promulgate rules and standards. Notice must be given to the public, and interested persons may submit written data or comments. Any employer may apply to the administrator for a variance from any such promulgated standard where hardship might result.

The granting of powers similar to the above has been held constitutional by this Court. In the case of *Fry v. Utah Air Conservation Committee*,[8] rules and regulations were promulgated and the Committee determined that there was a violation by Fry. It was there claimed that the constitutional requirements of due process of law and of delegation of legislative powers had been violated. This Court held that the act there did not violate any constitutional provisions.

In the case of *Wycoff v. P.S.C.*,[9] this Court upheld an assessment of $18,500 as a penalty at the rate of $500 per day for 37 days' violation of the rules and regulations of the Commission, and in doing so held:

There is no question but that in performing its multifarious duties in franchising and regulating public utilities the Commission is required to and does perform some functions of a judicial or quasi-judicial nature; nor that it is within the competence of the legislature to confer upon the Commission the power to do so and to enforce the law and its regulations made pursuant thereto by administrative procedures. It is well established that this includes the imposition of a monetary penalty for violation of law or lawful orders or regulations promulgated by the Commission within the scope of its administrative responsibility. . . .

The trial court also thought and held that the provision of Article I, Sec. 14 of the

---

7. 109 Utah 1, 6, 163 P.2d 314, 316 (1945).

8. Utah, 545 P.2d 495 (1975).

9. 13 Utah 2d 123, 369 P.2d 283 (1962).

Constitution of Utah was violated by the act. That section reads:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; . . .

It is to be noted that the constitutional provision only protects against *unreasonable* searches. Section 8 of the act in question provides only for *reasonable* searches. The language is clear:

The division or its representatives upon presenting appropriate credentials to the owner, operator, or agent in charge, may enter without delay *at reasonable times* any workplace where work is performed by an employee of an employer; inspect and investigate *during regular working hours and at other reasonable times in a reasonable manner,* any workplace and all pertinent methods, operations, processes, conditions, structures, machines, apparatus, devices, equipment and materials therein, and to question privately any such employer, owner, operator, agent, or employee. [Emphasis added.]

The act itself proscribes unreasonable searches and, therefore, does not offend against the constitution.

Article XVI, Sec. 6, of our state constitution provides: ". . . the legislature shall pass laws to provide for the health and safety of employees in factories, smelters, and mines." Section 8 of that Article provides: "The legislature may, . . . provide for the . . . comfort, safety and general welfare of any and all employees. No provision of this Constitution shall be construed as a limitation upon the authority of the legislature to confer upon any commission now or hereafter created such power and authority as the legislature may deem requisite to carry out the provision of this section."

In 1917 our legislature enacted a statute [10] that gave broad powers and duties to the Industrial Commission, among which is the power to adopt standards and regulations and to enforce orders and take other action deemed necessary to protect life, health, safety, and welfare with regard to specific industries.

Human life is precious, and this state for over sixty years has undertaken to protect it, especially where employees are concerned. An employee works in conditions over which he has no control. The state, therefore, assumes the role of his protector. It is a proper police power that is exercised under the various acts passed pursuant to the constitutional mandate, and should be upheld unless clearly offensive.[11]

There is a presumption that a statute or order of an administrative body acting pursuant to statutory authority, is constitutional in all cases;[12] and the presumption is greater where the interest of the state is involved than it is a case where only private interests are affected.[13]

I would hold the Occupational Safety and Health Act to be constitutional in its entirety and, therefore, would reverse the judgment of the trial court. No costs should be awarded.

CROCKETT, J., concurs in the views expressed in the concurring opinion of ELLETT, C. J.

10. U.C.A., 1953, 35–1–16.

11. 16 C.J.S. Const. Law § 98.

12. *Norville v. State,* 98 Utah 170, 97 P.2d 937 (1940); 16 Am.Jur.2d, Const. Law, § 144.

13. 16 C.J.S. Const. Law § 99.