347 P.2d 554

**Frank BAINE, Plaintiff and Appellant,**

v.

**George BECKSTEAD, Sheriff of Salt Lake County, Defendant and Respondent.**

No. 9049.

Supreme Court of Utah.

Dec. 10, 1959.

David H. Oliver, Salt Lake City, for appellant.

Grover A. Giles, County Atty., Richard C. Dibblee, Asst. County Atty., Salt Lake City, for respondent.

CROCKETT, Chief Justice.

The plaintiff contends that he is unlawfully restrained of his liberty because while he was on probation he was arbitrarily

committed to the state prison without being afforded due process of law. He petitioned for and obtained from the district court a writ of habeas corpus. After a hearing the petition was dismissed and plaintiff remanded to custody. He appeals.

On March 4, 1958, the plaintiff having been convicted of the crime of issuing a check against insufficient funds was sentenced to the statutory indeterminate term of not more than five years in the state prison. After due investigation and consideration by the court he was placed on probation under supervision of the Adult Probation and Parole Department. He entered into the regular probation agreement imposing conditions as to good behavior and requiring him to make periodic reports to the department. To accomplish this a stay of execution of the sentence was ordered until June 27, 1958. This status continued through three additional stays of execution of sentence of about three months each, the final one being until March 27, 1959.

On March 11, 1959, J. E. McFadden, the probation officer, filed an affidavit alleging that on or about March 6, 1959, plaintiff had committed the crime of assault with a deadly weapon upon one Earlene Kennon. Thereupon the court issued an order to show cause why the plaintiff's probation should not be revoked. There is nothing before us to indicate what happened on its return date, March 25, except that the record shows that the order to show cause was dismissed. However, in the instant case on habeas corpus, the plaintiff testified that he appeared in open court March 27, his regular reporting day, and the day of the expiration of the stay of execution; and a hearing was had at which he was sworn and testified. Pursuant thereto the court refused to further stay execution and ordered him committed in accordance with the original sentence. The heart of plaintiff's argument is that inasmuch as the record shows that the order to show cause was dismissed, there is no justification for the order of commitment.

The question presented by the plaintiff's contention that he was not afforded due process of law in being committed to prison while on probation is not without difficulty. It has been dealt with by this court in a number of cases, which we will refer to below.

█ The governing statute confers upon the trial judge discretion as to whether to place one convicted of a crime on probation or to commit him to prison. Sec. 77–35–17 U.C.A.1953 provides:

"Upon a plea of guilty or conviction * * * if it appears compatible with the public interest, the court * * * may suspend the imposition or the execution of sentence and may place the defendant on probation for such period of time as the court shall determine.

"The court may subsequently increase or decrease the probation period, and may revoke or modify any condition of probation."

It is to be kept in mind that deferments of commitment of persons convicted of crime are of two distinct types: one is probationary, the other is not. In the latter class the stay is a temporary one for purposes of adjustment to the exigent circumstances; that is, to give the court time for investigation and determination of what should be done; or it may be for the purpose of allowing the defendant time to put his affairs in order; or for other similar purposes which the court may think justify such a temporary delay. Under that type of stay the defendant does not attain probationary status. Under such a stay, when the purpose for granting it has been accomplished, there is no reason why the defendant cannot be committed forthwith without any procedural formality.[1]

■■ The other type of deferment, and the one we are concerned with here, is of an entirely different character. It is used when the court has made its determination and exercised its discretion to place the defendant on probation. This may be done in different ways, but whatever method is used, the purpose is reform and rehabilitation: to give the defendant a chance, as the word "probation" implies, to prove himself. For this purpose the defendant is required to agree to specified standards of conduct; and his continued liberty is dependent upon compliance with them. The same situation exists when he is on parole. In either case the freedom he enjoys is limited and is subject to revocation for violation of the prescribed conditions. But under such arrangements the obligations do not all run in one direction. The defendant promises to live up to stated requirements, and the public authority operating through the court extends to him the implied promise that if he makes good his probation will continue.

■ Notwithstanding the limitations on the freedom of such defendants, it is recognized that probation is a favored status. As well expressed by Justice Elias Hansen in the landmark case of State v. Zolantakis involving the question of termination of probation: "The right to personal liberty is one of the most sacred and valuable rights of a citizen, and should not be regarded lightly."[2] He further observed that one on probation should not be deprived even of his limited status of liberty upon whim or caprice, but where the defendant is given a sentence suspended upon good behavior, that he has a right to rely thereon so long as such condition is complied with. It was there held that the defendant should be ac-

1. Demmick v. Harris, 106 Utah 32, 144 P. 2d 761.

2. 70 Utah 296, 259 P. 1044, 1047, 54 A.L.R. 1463.

8

corded the procedural protection of notice wherein he was charged with failure, be given an opportunity to answer, and the privilege of being heard and of cross-examining the witnesses against him.

The underlying principle of the Zolantakis case has continued to be regarded as sound where the facts are generally similar, i. e., where the probation is indefinite as to time. In some cases the procedural steps therein set out have not been strictly required under differing fact situations. In regard to those cases, it can be said generally that upon analysis it seems quite clear that the controlling considerations are: was the defendant in fact in a status of probation and, do the circumstances in fairness and justice warrant the granting of a hearing to the defendant.

In the case of Demmick v. Harris [3] it was held unnecessary to follow the procedural steps set forth in the Zolantakis case, because the defendant had not actually been placed on probation, but the stay of execution was only for the purpose of allowing time to make inquiry into the advisability of granting it. The court indicated that if there had been probation in the true sense, that Demmick would have been entitled to notice and a hearing.

In Williams v. Harris [4] the defendant had been convicted of burglary in Weber County and placed on probation under successive stays of imposition of sentence, from date certain to date certain. During his probation he was also convicted of burglary in Utah County; was then brought before the court in Weber County and in response to questions admitted the later conviction. Upon his contest as to proper procedure, the court stated that the procedural formalities need not be followed, pointing out that the stay was until a fixed date, and that no further stay need be granted. Notwithstanding this observation, it is obvious under the facts that further formality of procedure would have served no useful purpose. The same observation applies to the case of Christiansen v. Harris,[5] where the defendant was brought into court and admitted that he had pleaded guilty to drunkenness and also that he had issued several insufficient funds checks.

While the same general principles apply, a different situation is represented in the cases of McCoy v. Harris [6] and Ex parte Follett.[7] In those cases the subjects were on parole and probation respectively. Both had left the state and had entirely failed to report to the probation department and to the court as required by their probation agreement. Of these facts there could have been no dispute and the commit-

3. Footnote 1, supra.
4. 106 Utah 387, 149 P.2d 640.
5. 109 Utah 1, 163 P.2d 314.
6. 108 Utah 407, 160 P.2d 721.
7. 119 Utah 98, 225 P.2d 16.

ment was therefore justified without the formality of a hearing to determine further bases for revocation.

In some of the cases above discussed, it has been suggested that the procedural requirements set forth in the Zolantakis case apply only where the subject is on probation and the sentence is suspended for an indefinite period; and that if there is a stay of execution to a definite date, there is no obligation to grant a further stay and the defendant may be committed without a hearing.[8] The idea has also been expressed that there is a distinction between probation and parole: in the former the defendant being entitled to a hearing, but in the latter not, based upon the reasoning that the parole board is less apt to be arbitrary than is the court.[9] However, if the situation is analyzed realistically, there appears to be no real basis for such distinctions. There is no magic in the particular words used. Whether the defendant be placed on probation or parole, and by whatever method this is effected, the fundamental and controlling consideration is the status of the defendant in relation to the court and its authority. The rights and duties depend upon the nature of that relationship. This is determined by what is done and the purpose thereof, rather than upon the technical aspects of the ritual by which it is accomplished.

If the court or the board of pardons has determined that the defendant is a proper subject for rehabilitation and has given him liberty on the condition that he prove himself by following a course of good behavior, he has thereby attained a favored status. He should be able to rely upon the representation that if he measures up to his responsibilities, he will not have his liberty taken from him capriciously nor arbitrarily. We are entirely in accord with the thought expressed by Justice Elias Hansen in the Zolantakis case, supra, that "reformation can certainly best be accomplished by fair, consistent, and straightforward treatment of the person sought to be reformed."

Probation programs are postulated upon an awareness that one who has been convicted of a crime in all likelihood has some social maladjustment and often a feeling that he is picked on or abused by society. Essential to the correction of these things and the bringing about of a well-disposed attitude toward society and its laws is the allaying of any existing feelings of inferiority or resentment. These considerations make it particularly important that his situation of limited liberty not be

8. Ex parte Follett, supra, footnote 7.

9. See discussion of Justices Larson and Wolfe in McCoy v. Harris, footnote 6, supra.

used as a basis to take advantage of or impose upon him. They rather argue the advisability of being careful, not only to treat him fairly, but in such a manner that he will see the fairness of it. Such a defendant is just as much, perhaps more, in need of reasonable and fair procedure as anyone else. The necessity of according him such privilege finds analogy in the familiar saying: a drunk man is just as much entitled to a safe sidewalk as a sober one, and a good deal more in need of it. This does not argue that it is necessary to go to absurd lengths to treat such defendants with kid gloves for fear of offending their sensibilities. But it does argue that there should be some reasonable standards of procedure and that they should be observed.

Some practical middle ground should be found between two extremes: on the one hand of compelling a defendant on probation to live in fear that for some trivial reason, or without reason, he may be ordered committed upon someone's whim or caprice; and on the other hand, the hamstringing of the court so that it cannot with reasonable facility commit a defendant if he deems it proper to do so. Either extreme is undesirable: the first because of its inherent injustice and that it does not correlate with the fundamental objective of probation: rehabilitation. The second because it is so impractical that courts will

refuse to place a subject on probation if it is too difficult to commit him if the probation proves unsuccessful.

■ The question is: what procedure should be followed in connection with revocation of probation. It is, of course, not necessary that it be elevated to the level of a trial. The defendant has already been adjudged guilty of crime and it is not essential to convict him anew.[10] If he has failed to report to the court in violation of his agreement as in the cases of McCoy v. Harris and Ex parte Follett, supra, that fact is apparent from the court's own records and would provide a prima facie basis for revocation without formality of a hearing. If this were not so, great difficulty might be encountered in bringing back absconding probationers.

■ When the defendant is within the jurisdiction under a probation order, or on parole, there should be at least some minimal procedural safeguards so that he may not be deprived of his liberty arbitrarily and without an opportunity to meet an accusation against him. He need not be indulged the presumption of innocence, nor necessarily be afforded the other protections accorded one accused of crime in the first instance. But he should be given some manner of notice as to wherein he is accused of failing in his responsibilities. It would not seem necessary in all instances

10. State v. Bonza, 106 Utah 553, 150 P. 2d 970.

that this be done by formal pleadings or in any particular formal manner. If the probationer acknowledges to the court the claimed violations, no other formality would be necessary. However, if there is dispute about the accusation upon which the revocation is based, and concerning which reasonable minds might differ, a hearing and inquiry into the matter should be held.[11] In such instance the defendant should be obliged to give account of himself; and to have the privilege of presenting evidence in his own behalf and the right of cross-examination of his accusers.

 In the instant case the filing of the affidavit accusing the plaintiff of a crime and the service of the order to show cause upon him provided him with notice. The transcript of what transpired in court with respect thereto has not been brought before us on this appeal, but it seems plainly apparent that the action of the court on March 27 in refusing to further stay execution of sentence and committing the defendant, resulted therefrom. That being so, the disposition of the order to show cause became unimportant. In the absence of a record showing what happened it must be assumed that the proceeding established a sufficient basis to justify the order of the court. In attacking it, the burden was upon the defendant to affirmatively show error, failing which, the action of the trial court is deemed to be correct.[12]

Affirmed. No costs awarded.

WADE and McDONOUGH, JJ., concur.

CALLISTER, J., concurs in result.

HENRIOD, Justice (concurring in the result).

I concur in the result, but for one reason only: That a stay of execution was granted to a date certain, the date expired, and there is nothing in the record to justify any other action than that of the lower court in committing the accused upon such expiration.

That should end the matter, without any discussion of factually dissimilar cases not pertinent here, as indulged in the main opinion. I believe such obiter but fans the flame of debate as to the elasticity of prison walls and the like, suggests possible incompetence and unfairness on the part of parole officials and sentencing judges, and provokes a disposition on the part of judges to commit offenders without stay of execution, leaving the matter to the pardoning authorities.

I cannot agree with the main opinion's statement that "The question is: what pro-

---

11. See concurring opinion of Wade, J. in Christiansen v. Harris, footnote 5, supra.

12. Burton v. Zion's Cooperative Mercantile Institution, 122 Utah 360, 249 P.2d 514 and authorities cited therein.

cedure should be followed in connection with *revocation* of probation." The question in this case simply is: Should the defendant be granted a further stay of execution? There was no revocation of probation here at all. There simply was an expiration of the period during which a stay of execution was granted, followed by commitment. The gratuitous language of the main opinion and that lifted from other cases, in my opinion, should be reserved for an appropriate case when it arises, none of the cases cited therein, save Demmick v. Harris, having any pertinency here, and most of the language of the main opinion having to do with revoking probation in the middle of the probation period, a factual circumstance far removed from the instant case.

Even though most of the language has to do with termination of a probation period, the main opinion indicates that if there is a dispute about the accused's conduct during the stay period, a hearing must be had to determine if another stay of execution should be granted. What would happen if the sentencing court refused to grant a further stay under such circumstances? Would we order the court to conduct a hearing? If so, and such a hearing were had, would we order the sentencing court to grant a further stay of execution? And for how long? Or would we grant a further stay of execution? And for how long? If so, to whom would the accused report? And would we conduct a hearing at the end of the stay period? Or would we release the accused by writ of habeas corpus without further hold or restraint?

In my opinion the philosophy of the main opinion, so ar as it relates to forcing sentencing courts to grant further stays of execution that they deem inadvisable, simply will operate to the disadvantage of accused persons, by encouraging trial courts to refrain from granting stays of execution at all, if, as the main opinion asserts, a hearing must be had if there is any dispute as to the conduct of the accused during the stay of execution period. I venture the guess that in *every* instance where such further stay is refused, promptly a dispute would arise by *every* defendant displaying his good conduct medal. Italics supplied.