351 P.2d 91

James R. McPHIE, Plaintiff and Appellant,

v.

John W. TURNER, Warden of Utah State Prison, Defendant and Respondent.

No. 9163.

Supreme Court of Utah.

April 19, 1960.

Dudley M. Amoss, Salt Lake City, for appellant.

Walter L. Budge, Atty. Gen., Vernon B. Romney, Asst. Atty. Gen., for respondent.

WADE, Justice.

Plaintiff appeals from a denial of his petition for a writ of habeas corpus. He contends that after he was convicted and sentenced to a term in the state prison for issuing a fictitious check, he was placed on probation and later in violation of due process of law,[1] and without a hearing on whether he had violated his probation, the stay of execution was terminated, and he was committed to the state prison.

Plaintiff was originally sentenced on February 7, 1958, whereupon execution of such sentence was stayed until April 18, 1958, and he was placed under the supervision of the Adult Probation and Parole Department and released from custody. Three additional stays of execution were granted. The last one expired January 9, 1959, when the court stated "that no good cause appearing for further stay" committed plaintiff to the state prison without any hearing on whether he had violated his probation, or, as far as the record discloses, any claim of any irregular conduct.

At the hearing on plaintiff's petition the state did not claim that he had violated his probation. It merely argued, and the court held, that since the time specified for stay of execution had expired, the court could, without any violation of his probation, determine that plaintiff was not a fit subject for probation and refuse further stay of execution and commit him to prison regardless of whether plaintiff had violated his probation.

Under these circumstances, even with a stay to a specified date, the plaintiff was, in effect, placed on probation with an implied agreement that the stay would not be terminated during his good behavior. So this termination without a hearing or any claim of misconduct by plaintiff was a denial of plaintiff's right of due process of law. In the recent case of Baine v. Beckstead,[2] through Chief Justice Crockett, this court said:

"It is to be kept in mind that deferments of commitment of persons convicted of crime are of two distinct types: one is *probationary*, the other is not. In the latter class the stay is a temporary one for the purposes of

---

1. See Constitution of Utah, Article I, Section 7.

2. Baine v. Beckstead, 10 Utah 2d 4, 347 P.2d 554, 557.

adjustment to the exigent circumstances; that is, to give the court time for investigation and determination of what should be done; or it may be for the purpose of allowing the defendant time to put his affairs in order; or for other similar purposes which the court may think justify such a temporary delay. Under that type of stay the defendant does not attain *probationary* status. Under such a stay, when the purpose for granting it has been accomplished, there is no reason why the defendant cannot be committed forthwith without any procedural formality.

"The other type of deferment, and the one we are concerned with here, is of an entirely different character. It is used when the court has made its determination and exercised its discretion to place the defendant on *probation*. This may be done in different ways, but whatever method is used, the purpose is reform and rehabilitation: to give the defendant a chance, as the word 'probation' implies, to prove himself. For this purpose the defendant is required to agree to specified standards of conduct; and his continued liberty is dependent upon compliance with them. The same situation exists when he is on parole. In either case the freedom he enjoys is limited and is subject to revocation for violation of the prescribed conditions. But under such arrangements the obligations do not all run in one direction. The defendant promises to live up to stated requirements, and the public authority operating through the court extends to him the implied promise that if he makes good his *probation* will continue." (Emphasis ours.)

The circumstances of that case were very similar to those here disclosed. The differences are that there plaintiff was served with an order to show cause why his probation should not be revoked and a hearing thereof was held in which plaintiff appeared and testified. The plaintiff in that case failed to bring the record of that hearing to this court, but relied instead on the fact that the court dismissed the order to show cause against him, claiming that this showed that there was no justification for the commitment. This we rejected, holding that the revocation was pursuant to the hearing notwithstanding the dismissal.

 There we held that the only reasonable finding which the circumstances disclosed would justify was that plaintiff had been placed on probation for reformation in the public interest, and therefore, his stay could not be terminated unless there is a conclusive showing of a violation, or in the absence thereof, a hearing as to whether he had violated his probation. The circumstances which bear on this question, of

the two cases, are almost identical. In both cases sentence was suspended to a definite date; plaintiff was placed under the supervision of the Adult Probation and Parole Department, released from custody and was granted three additional stays of execution. Under such conditions, in the absence of an express provision by the court that the stay was for a specified purpose and not for probation, we must conclude that plaintiff was placed on probation in the interest of reformation, and that a contrary holding would be unreasonable. Had the stay been for a relatively short time, say for a week or so, or had the court expressly pointed out that the purpose for such stay was to investigate or some other reason inconsistent with probation, then a different result might be justified.

It has been suggested that this holding may cause the trial courts to deny any stay of execution because of the complications involved even in cases where the public interest requires probation. We see no merit to this contention. It suggests that courts, in order to exercise arbitrary and capricious power, will violate their oath of office and their duty to the public. Why should any honest judge adopt such a policy? The very suggestion shows a lack of confidence in the integrity of our courts, which we do not share.

The ruling committing the defendant is reversed and the case is remanded to the district court for such further proceedings as is deemed advisable and not inconsistent with this opinion.

CROCKETT, C. J., and McDONOUGH, J., concur.

HENRIOD, Justice (dissenting).

I dissent for reasons I stated in Baine v. Beckstead and those stated by Mr. Justice Callister in the instant case.

I think this case and Baine v. Beckstead create a startling anomaly that permits a convicted person to use the benevolence of a judge to cast that same judge in the role of an accused, not a benefactor. The decision here, based on a denial of due process apparently will require as a minimum that before a judge refuses to grant a further stay of execution, he must 1) give formal notice of his intention not to grant a further stay, 2) give the convicted person an opportunity to be represented by counsel, and 3) permit the cross-examination of the judge who befriended him.

Ordinarily denial of a stay of execution is prompted by confidential information received by the judge from the probation authorities,—information he must in all good conscience treat inviolate. Now he has two hopeless alternatives: 1) to betray that trust and divulge such information, thus most certainly drying up the sources of confidential information, or 2) to respect

the confidential information by nondivulgence, with the requirement imposed by these cases that he grant a further stay (for how long, the main opinion does not inform us, and no one else seems to venture a guess), with renewed claim of denial of due process at the expiration of each stay of execution, ad infinitum.

I think these cases are vehicles to carry the administration of criminal justice into a domain of uncertainty and absurdity. The new impedimenta which these cases place in the path of the trial judge makes hollow the language we have used in the past in characterizing him as having "sound discretion," and it levels him to the position of having to defend himself to the convicted person whom he has befriended and tell him facts in order to prove that he is not being indiscreet in refusing to grant another stay.

The implication of these cases would seem to invest him who has been given a stay of execution, with the right to examine the confidential files of the probation authorities, and to unlock the top drawer files of the judge himself. Such results are almost incomprehensible in investigative and probationary areas relating to the administration of criminal justice.

The main opinion's assertion that there is no merit in any suggestion that trial courts may deny stays of execution because of complications incident to the new procedure engendered by our present pronouncements, is an assertion without merit itself. Trial courts simply, honestly, conscientiously and statutorily may, after sentence, transfer the probationary phase of a case immediately to the Board of Pardons, by commitment. That agency may parole the convicted person as easily as the trial court could place him on probation,—under the supervision of the same probationary authorities.

This writer, in suggesting such a development, does not show lack of confidence in the integrity of our courts, but ventures a confidence in the type of reaction they will harbor in being required to indulge an impractical procedure in administering their own cases in their own courts, subjecting them to cross-examination by, and explanation to a convicted cestui que trust, who absent such explanation, can now force his erstwhile trustee to deliver him a trust res to which initially he was not entitled.

CALLISTER, Justice (dissenting).

I dissent and, in so doing, adopt the views expressed by Mr. Justice HENRIOD in his concurring opinion in the recent case of Baine v. Beckstead.[1]

The instant case is the natural outgrowth of the views expressed in the prevailing

1. 10 Utah 2d 4, 347 P.2d 554, 561.

opinion in the Baine case. In that case it was held that the petitioner had been afforded a hearing and therefore the judge was justified in failing to grant the petitioner a further stay of execution of the sentence previously imposed. However, the prevailing opinion expounded the proposition that, as a general rule, a convicted defendant who is granted a stay or suspension and placed on a "probationary status" must be afforded notice and a hearing before a judge may, at the expiration of the stay or suspension period, refuse to grant a further stay or suspension. In expounding this proposition, the prevailing opinion relied upon the case of State v. Zolantakis.[2]

Neither this case nor the Baine case come within the holding of the Zolantakis case. That case involved a suspension of a sentence during good behavior without any limitation as to time. The stay order was *revoked*. It did not *expire* as in the instant case and as in the Baine case.

The majority opinion in the Zolantakis case (it was a 3–2 decision) only stands for the proposition that it is a denial of due process to *revoke* an indefinite stay order without affording the probationer a hearing.

I have my doubts as to the correctness of the majority opinion in the Zolantakis case. I would subscribe to the views of the minority as expressed in Justice Cherry's dissent, wherein he stated:

"When the execution of a sentence is suspended, it is not vacated. The judgment itself is not impaired or limited. The time for execution is merely deferred. * * * When the suspension is revoked the convict is punished for the crime of which he was convicted, and not for violating the terms of his parole. The suspension of a sentence can never be demanded as a matter of legal right. It is granted at the mere will of the court. When granted, it is not held as a vested right, but as a matter of favor or grace. * * * The suspension of a sentence is not a fixed and final adjustment amounting to a right to be revoked only upon a violation of the condition upon which it is granted, because the statute expressly declares that 'the court may subsequently increase or decrease the probation period and may revoke or modify any condition of probation.' Clearly, this precludes the claim that the judgment is unenforceable until, after due process of law, it is adjudged that the condition of probation has been violated. The power of the court to revoke is not limited to when the conditions have been violated, but extends to the

2. 70 Utah 296, 259 P. 1044, 1047, 54 A.L.R. 1463.

modification or revocation of the condition itself."

While there is a conflict of authority, the view that there is no constitutional basis for notice and hearing as a requisite to revocation of the conditional liberty of a convicted person appears to be the sounder and more logical view.[3]

In the absence of a statute so providing, a probationer should not be entitled, as a matter of right, to notice and hearing before his probation is revoked. In Escoe v. Zerbst,[4] Justice Cardozo said:

"In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose."

If the requirement for notice and hearing is desirable, it is a proper subject for legislative enactment. The provisions of our present statute [5] would seem to negative any such requirement.

Under our present statutory law, it is hard for me to rationalize why a judge may, in the first instance, have the sole discretion to grant or deny a stay or suspension of sentence, but be denied the same discretion in revoking or terminating a stay or suspension.

Assuming the Zolantakis case to be the settled law in Utah, it should be confined to its particular circumstances and not extended to those situations where the stay order is not revoked but expires. We should not indulge in the fiction that a judge impliedly promises a convicted person successive stays if he behaves himself.

---

3. 29 A.L.R.2d 1074, 1078.
4. 295 U.S. 490, 55 S.Ct. 818, 819, 79 L. Ed. 1566, 1568.
5. 77–35–17, U.C.A.1953: "Upon a plea of guilty or conviction of any crime or offense, if it appears compatible with the public interest, the court having jurisdiction may suspend the imposition or the execution of sentence and may place the defendant on probation for such period of time as the court shall determine.

"The court may subsequently increase or decrease the probation period, and may revoke or modify any condition of probation. While on probation, the defendant may be required to pay, in one or several sums, any fine imposed at the time of being placed on probation; may be required to make restitution or reparation to the aggrieved party or parties for the actual damages or losses caused by the offense to which the defendant has pleaded guilty or for which conviction was had; and may be required to provide for the support of his wife or others for whose support he may be legally liable. Where it appears to the court from the report of the probation agent in charge of the defendant, or otherwise, that the defendant has complied with the conditions of such probation, the court may if it be compatible with the public interest either upon motion of the district attorney or of its own motion terminate the sentence or set aside the plea of guilty or conviction of the defendant, and dismiss the action and discharge the defendant."

244

The late Justice Wolfe in the cases of McCoy v. Harris [6] and Christiansen v. Harris [7] expressed his doubts as to the correctness of the majority decision in the Zolantakis case. In the Christiansen case he also expressed the fear that requirements of notice and formal hearings would go a long way to discourage a judge from granting probation.