Justice LEE,
dissenting:
I 68 Utah law has long committed a range of sentencing decisions to the sound discretion of the trial judge. The statute at issue here, Utah Code section 76-5-302(8), appears to me to fall squarely within this discretionary sentencing regime. It does so by leaving the question of whether to impose a sentence of life without parole for aggravated kidnapping to the trial judge's assessment of the "interests of justice."
T 69 The majority turns that discretionary standard on its head. Instead of deferring to the historically broad discretion conferred on trial judges, the court interprets the "interests of justice" standard to require a sentencing judge to carefully consider specific factors that the court deems relevant to an assessment of the "proportionality" of a sentence and to the defendant's "potential for *271 rehabilitation." Supra 155. I respectfully dissent. I find no basis in the statute for imposing this rigid framework-imported from constitutional jurisprudence in a case in which no constitutional challenge has been asserted-on a judge exercising discretion under section 76-5-302(8). I would interpret the statute to preserve the broad discretion long conferred on trial judges on matters of discretionary sentencing. And I would affirm the imposition of the sentence of life without parole in this case, under the highly deferential "abuse of discretion" standard of review.
I
170 In Utah as elsewhere, our law has long recognized a wide berth of discretion for judges exercising the important duty of imposing a criminal sentence.[1] Such discretion is not without limits But so long as the judge imposes a sentence within the range of punishments established by law, and based on an inquiry into the nature of the offense and of the offender, the law has long upheld the judge's prerogative of determining the appropriate sentence.[2]
T 71 With a few limited exceptions, the law has also long deferred to the trial judge's discretion in identifying the range of offense-based and offender-based considerations relevant to the ultimate decision as to where to fix the sentence within a statutory range.[3] For the most part, we have left it up to individual judges to make a personal assess *272 ment of the factors he deems relevant to the ultimate imposition of a sentence. And we have rooted that approach in the trust we place in the trial judge, who has first-hand interaction with the defendant and thus "the main responsibility for sentencing." [4]
T72 Our Utah system of "indeterminate" sentencing cireumseribes the trial judge's discretion to some degree. It does so by generally prescribing indeterminate sentencing ranges for various categories of offenses, with the ultimate amount of time served being decided not by the sentencing judge at the outset but by the parole board in subsequent hearings.[5] Under this system of indeterminate sentencing, for example, a second-degree felony is generally subject to a sentence of a prison term of one to fifteen years. Utax Cope § 76-8-208(2). So a trial judge sentencing a defendant convicted on such a charge would not impose a specific sentence within the statutory range of one to fifteen years; he would simply impose a sentence of one to fifteen years, and the defendant's actual time served would be determined by a subsequent decision of the parole board.
173 But that does not mean that our judges do not exercise discretion. First, not all sentencing decisions are subject to the indeterminate sentencing regime, as this case illustrates. See Urax Copr § 76-5-302(3) (leaving it to the judge to decide whether to impose a sentence of life without the possibility of parole for the crime of aggravated kidnapping). Second, even as to offenses that are subject to indeterminate sentences, the judge still is faced with discretionary judgments-e.g., whether to place a defendant on probation and/or suspend a prison sentence, whether to order that sentences on multiple offenses be served concurrently or consecutively, and whether to enter a convietion for a lower category of offense under Utah Code section 76-3402. See Uran Cope § 76-3-402(1) (authorizing sentencing court to enter a "judgment of conviction for the next lower degree of offense" upon determination that it would be "unduly harsh" to enter conviction at charged level); id. § 76-3-402(2) (authorizing court to "enter a judgment of conviction for the next lower degree of offense" if it "suspends the execution of the sentence and places the defendant on probation" and determines that it is in the "interests of justice" and the defendant is successfully discharged from probation and meets other conditions).
T 74 The process for exercising this discretion is regulated by statute and by rule. Under Utah Code section 77-18-1(7), "[alt the time of sentence, the court shall receive any testimony, evidence, or information the defendant or the prosecuting attorney desires to present concerning the appropriate sentence." (Emphasis added.) This provision also requires that such "testimony, evidence, or information shall be presented in open court on record and in the presence of the defendant." Id. Rule of Criminal Procedure 22 is to the same general effect. It *273 provides that "[blefore imposing sentence the court shall afford the defendant an opportunity to make a statement and to present any information in mitigation of punishment, or to show any legal cause why sentence should not be imposed," and also that "[the prosecuting attorney shall also be given an opportunity to present any information material to the imposition of sentence." Urax R.Crim. P. 22(a) (emphasis added).
€75 The point of these provisions is straightforward: Both the defense and the prosecution have the opportunity to make a presentation as to any considerations or information they deem relevant to sentencing; and the judge then exercises his broad discretion to impose a sentence based on the considerations he deems most salient.[6] Appellate review of the sentencing judge's decision, moreover, is limited. A sentence imposed in accordance with the prescribed procedure is reviewed under an "abuse of discretion" standard of review.[7] And a judge may be deemed to have abused his discretion only if the appellate court determines (a) that he based his decision on considerations or information not properly presented,[8] or (b) that no reasonable judge would have entered such a sentence under the cireumstances.[9]
T76 We have applied these standards in upholding the exercise of the discretion of a trial judge in making the decision whether to suspend a sentence on condition of probation. See State v. Killpack, 2008 UT 49, ¶ 18, 191 P.3d 17, 23 (Utah 2008) (affirming decision to commit adoptive mother to prison instead of probation on conviction of child abuse homicide).[10] In affirming such sentencing decisions, we have confirmed that the trial courts have wide discretion, while explaining that the exercise of such discretion is not to be overridden on appeal absent a showing of abuse. Baine, 347 P.2d at 556; Williams, 149 P.2d at 642.
*274 T77 The sentencing judge's discretion as to the considerations relevant to sentencing is not unlimited. But its limits are found in the terms of the constitution. Thus, in State v. Lipsky 608 P.2d 1241 (Utah 1980), we held that the information set forth in a presen-tence report may not be considered in sentencing unless it is provided to the defendant for the purpose of review and response. And we based that decision on principles of notice and due process, explaining that "fundamental fairness requires that procedures ... in the sentencing phase of a criminal proceeding be designed to insure that the decision-making process is based on accurate information," and holding that a "defendant's right to be sentenced on the basis of information that is accurate can be protected only if the pre-sentence report is disclosed to him prior to sentencing." Id. at 1248.
T 78 We have also identified another limitation on sentencing in cases where such discretion is exercised in a manner interfering with the authority afforded to the Board of Pardons and Parole by statute and by the Utah Constitution. See Urax Const, art. VII, § 12 (recognizing authority of board to "grant parole ... in all cases except treason and impeachments, subject to regulations as provided by statute"); Uran Copm § 76-3-401 (allowing multiple sentences to be imposed consecutively if the judge considers, among other factors, the "rehabilitative needs of the defendant"). Thus, in State v. Strunk, 846 P.2d 1297 (Utah 1993), we reversed the imposition of consecutive sentences of a minimum of fifteen years for child kidnapping and nine years for aggravated sexual assault for a defendant who was sixteen years old at the time of his offense. Id. at 1300-02. In so doing, we held that such a sentence improperly deprived the parole board of the "flexibility" guaranteed it by statute and the constitution. Id. at 1801-02. And, in State v. Smith, 909 P.2d 236 (Utah 1995), we reversed a decision imposing consecutive sentences amounting to "a minimum mandatory life sentence" because it would "deprive the Board of Pardons of discretion to take into account defendant's future conduct and possible progress toward rehabilitation." Id. at 245.
T79 Courts in other jurisdictions have identified additional factors that may not be considered at sentencing without running afoul of the constitution [11] such as race,[12] national origin,[13] and gender.[14] Except in these limited cireumstances, however, the law generally has left it to the sound discretion of the trial judge to decide what offense-based or offender-based considerations seemed most salient to the sentencing decision, and to impose a sentence based on his discretionary judgment in light of all of the considerations as he saw them.
180 The breadth of this sentencing discretion is not without controversy. The flip-side of broad discretion is the potential for inconsistency. And that potential has generated a number of responses to the traditional regime of discretionary sentencing described above. One well-known response is the invocation of "sentencirig guideline" schemes aimed at replacing the individual judge's discretion with a formulaic sentencing system adopted pursuant to sentencing reform initiatives.[15] Such schemes have *275 been adopted at both the federal and state level.[16] But although these efforts have been lauded by commentators concerned about the downsides of broad sentencing discretion, they have also met some detractors.[17] More significantly, the sentencing guidelines movement has also run into constitutional resistance, culminating in a United States Supreme Court decision striking down the "mandatory" application of the federal guidelines on Sixth Amendment grounds. United States v. Booker, 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).
{81 Other responses to the traditional system of discretionary sentencing have come in the form of constitutional challenges in the courts. First was a challenge under the Eighth Amendment to the imposition of the death penalty, based on the allegation that discretionary sentencing as applied to the imposition of the death penalty led to arbitrary decision-making, perhaps leading to racial imbalances in the imposition of this sentence. That challenge culminated in the Supreme Court's per curiam decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which resulted in a moratorium on the death penalty for a period of time in which the states were given time and some discretion to decide how to eliminate this arbitrariness. And the Fur-man decision in turn led to the decision in Gregg v. Georgia, in which the court lifted the moratorium after upholding the constitutionality of a system in which Georgia and other states fundamentally altered their traditional discretionary sentencing system by (a) bifurcating their proceedings in a manner separating the guilt and penalty phase, and (b) directing juries at sentencing stage to exercise their discretion under instructions limiting the death penalty to cases in which certain aggravating civreumstances are found to outweigh mitigating cireumstances. Gregg v. Georgia, 428 U.S. 153, 190-95, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
T82 The second main conétitutional challenge to discretionary sentencing came in *276 Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, TT L.Ed.2d 637 (1983). In Solem, the Supreme Court struck down the imposition of a life sentence (under a recidivism statute) for a conviction of passing a "no account" check of $100. In so doing the court rejected the proposition that the Eighth Amendment is limited to the proscription of the sorts of "cruel and unusual punishments" decried as barbaric at the time of the founding of the constitution, and embraced in addition a principle of "proportionality." Id. at 285, 288, 290, 103 S.Ct. 3001. That principle, as the majority notes, is one under which a court considering the constitutionality of a sentence under an Eighth Amendment challenge could assess the gravity of the offense at issue and the harshness of the penalty, the sentences imposed on other criminals in the same jurisdiction for similar offenses, and the sentences imposed for imposition of the same crime in other jurisdictions. Id. at 290-91, 103 S.Ct. 8001.
1 83 The Solem standard, however, is not a generally applicable limitation on sentencing discretion. It is a constitutional standard, which is properly invoked only upon the assertion of an Eighth Amendment challenge to a given sentence.[18]
II
T 84 This history provides the background necessary for our interpretation of the sentencing discretion prescribed in Utah Code section 76-5-302(8). The statute is part and parcel of a longstanding system of discretionary sentencing. Section 76-5-302(8) seems to me to preserve that discretion. It does so by directing the judge to impose the sentence he deems consistent with his sense of the "interests of justice."
1 85 The hazy terms of the statute seem to me to emphasize the breadth of the judge's discretion in sentencing. As used in our sentencing scheme and elsewhere, this phrase appears to be little more than a reinforcement of the court's broad discretion to impose a sentence that it deems appropriate in light of the relevant circumstances as perceived by the judge.
1 86 Most often, the notion of "interests of justice" is used to impart discretion for a judge to depart downward from a presumptive statutory sentence for a particular crime.[19] The implication, without more, is *277 simply to reinforce the broad range of a judge's discretion. And the phrase's general use in other wide-ranging provisions of the code seems to reinforce this notion of broad discretion.[20]
I 87 I find no room in the statutory authority to impose a sentence "in the interests of justice" for the complex, detailed sentencing standards prescribed by the majority. Granted, the legislature does not always use "the phrase ... in the same manner in all the[ ] different contexts" in which it appears in our code. Supra 128. But to me that only reinforces the understanding of this phrase as a general placeholder for a principle of broad judicial discretion-discretion that may be exercised in different ways in different contexts, but that is broad and not easily subject to reversal on appeal.
€88 I agree that the current version of section 76-5-302(8) is not the equivalent of the now-repealed instruction to courts to impose a sentence for aggravated kidnapping based on a consideration of aggravating and mitigating cireumstances identified by the Utah Sentencing Commission. See supra €32 (citing Urax Coprm § 76-5-302 (2007). But I would not draw that inference from the mere fact of amendment of the old scheme-much less from the fact that the legislature "had the means and knowledge" to require consideration of aggravating and mitigating cireumstances if it intended to do so. Supra 11 31-82. After all, the mere fact of a legislative amendment tells us little or nothing about the reason for amendment-which could either be an intent to abandon the old scheme in favor of a different one, or simply a desire to reword the statute in equivalent or synonymous terms.[21] And the legislature's capacity to speak more clearly-here as almost always-tells us absolutely nothing. It's true, of course, that the legislature could have clearly reinforced the mitigating and aggravating factors imposed under prior legislation; but it also could have spoken more clearly the other way, expressly repudiating those terms. So the failure to speak more clearly gets us nowhere in the face of an ambiguity like this one.[22]
89 The majority presumes that any rejection of the old mitigation-aggravation construct must have been a preference for something even more restrictive. Thus, after announcing its conclusion that the statute is not "equivalent to the previous aggravating-and-mitigating cireumstances language," the court assumes that the existing statutory standard must necessarily be more restrictive than the one it replaced. Supre 182. And it then proceeds to develop such a standard from the general "goals" stated in our criminal code and from Eighth Amendment easelaw on proportionality in sentencing (under Solem v. Helm ).
1 90 I find no basis for such a standard in section 76-5-302(@8). Black's Law Dictionary defines "justice" as "[the fair and proper administration of laws." Brack's Law DicTIONARY 942 (Oth ed.2009). Thus, the statutory direction to the court to impose the sentence it deems to be in the "interests of justice" is a straightforward reiteration of the judge's duty to decide what seems most "fair and proper." That cannot properly be construed to require the court to follow the *278 rigid, detailed framework of aggravating and mitigating cireumstances.
I 91 Instead, the terminology of the statute is a straightforward reiteration of the longstanding principle of broad sentencing discretion. Our opinion in State v. Russell, 791 P.2d 188 (1990), hammers this point home. There we rejected the notion that discretion in sentencing is a matter that may be "surrendered to a mathematical formula," and reiterated instead the wide-ranging discretion afforded to the sentencing judge. Id. at 192. And our articulation of the essence of that discretion is telling. We stated that the "overriding consideration" for a judge imposing a sentence "is that the sentence be just." Id. (Emphasis added.) [23]
T 92 I would accordingly read the terms of the governing statute as a straightforward reiteration of the longstanding discretion afforded to the sentencing judge. And I would not deem those terms to be overridden by the "general purposes" articulated in the pre-ambular provisions of the criminal code. Su-pro 134. None of these purposes identify, much less attempt to define, the meaning of "interests of justice" in sentencing or even in our criminal law.
T93 As the majority notes, section 76-1-106 does make a general reference to "justice" (though not "interests of justice"). Su-pro I 34. But even that term is used only to prescribe a rather fuzzy canon of construction of the code-to direct the courts to construe it "according to the fair import of [its] terms to promote justice and to effect the objects of the law and general purposes of [slection 76-1-104." Supra 134. This general canon seems to me to have little or nothing to do with the question presented here-of the meaning of "interests of justice" in a sentencing statute.
¶ 94 The majority cites this provision as a basis for importing an analysis of the principles of proportionality and rehabilitation, since the third of the four general purposes identified in section 104 encompasses the prescription of "penalties which are proportionate to the seriousness of offenses and which permit recognition of differences in rehabilitation possibilities among individual offenders." Urax Copm § 76-1-104. In light of this general reference to these principles, the court reads the "interests of justice" consideration in section 76-5-302(8) to require an individualized assessment of proportionality and rehabilitative potential in each case prior to the imposition of a sentence under this statute.
£95 I cannot agree with this approach. The general purposes cited by the majority are purposes of the criminal code-not of trial judges exercising discretion in sentencing. «Thus, the general purposes invoked by the court have no apparent connection to our interpretation of the "interests of justice" consideration in sentencing under section 76-5-302(8). That phrase, again, is a reinforcement of the judge's broad sentencing discretion. And the longstanding tradition of such discretion runs clearly contrary to the detailed review for proportionality and rehabilitative potential prescribed by the court.
¶ 96 The court's standard turns the above-recounted history on its head. Traditionally, the principal limits on the judge's discretion in sentencing have been constitutional in nature. Thus, except where limited by the Eighth Amendment, principles of due process, or otherwise, our law has long left it up to the judge to determine the considerations that seem most salient to him and to impose an appropriate sentence in light of those considerations. The court's decision today inverts this inquiry. In a regime governed *279 by highly discretionary standards, and in a case in which the defendant has not asserted a constitutional challenge to his sentence, the court nonetheless reverses the sentence and remands for an evaluation of considerations (of proportionality and rehabilitative potential) heretofore arising only in case of a constitutional challenge to a sentence.[24]
T 97 This will surely come as a shock to the district judge in this case, who could not possibly have imagined being reversed for not engaging an Eighth Amendment analysis of proportionality in a case where no one had ever invoked the Eighth Amendment. And I suppose it will even come as a shock to counsel for LeBeau, who are being granted broad license to challenge the presumptive sentence endorsed by the legislature on grounds they never advanced in the proceedings below and thus have not preserved.
III
98 For the above reasons, I1 would interpret the terms of section 76-5-802(8) to preserve the traditional, broad sentencing discretion long afforded to trial judges in Utah. Thus, I would note that before imposing a sentence in this case, the district judge was required by statute to "receive any testimony, evidence, or information the defendant or the prosecuting attorney desires to present concerning the appropriate sentence." UTaAK Cone § 77-18-1(7). But beyond that, and except as foreclosed by the limitations of the Utah and United States Constitution, I would hold that the sentencing decision under seetion 76-5-302(8) was committed to the broad discretion of the judge to identify the considerations that he deemed appropriate in imposing a sentence that he deemed consonant with the "interests of justice." And I would affirm on that basis, as I see nothing in this record to suggest that he abused his sound discretion in imposing the sentence he selected.
T 99 I can understand a degree of discomfort with the sentence imposed on LeBeau. From what I can tell on the face of the cold record before us on this appeal, I suspect I may not have imposed the sentence that was handed down in this case. But sentences in Utah are not imposed on the basis of cold records. They are imposed by trial judges, who are informed by a wealth of understanding and firsthand experience that appellate judges lack. That is why our law affords those judges such broad discretion, and why we limit our review on appeal for the rare abuse of discretion.
€100 I can also appreciate a degree of discomfort with the discretionary sentencing scheme that we have adopted in Utah. As I noted above, and as proponents of sentencing reform have been advocating for decades, the downside of discretion is the potential for arbitrariness.[25] And that potential is certainly troubling. My point is not to express a preference for a more regimented, guidelines-based approach to sentencing, or even disapproval of our existing regime. The tradeoffs between case-by-case discretion and guidelines-based sentencing formulas pose intractable dilemmas for policymakers, and my understanding of the matter is far too limited to feel confident in advocating for one over the other. Thus, my point is more narrow. It is simply that despite the limitations of our current regime, it is not our prerogative to remake it by judicial fiat. I *280 dissent from a decision that strikes me as a baseless move in that direction.

. See State v. McGee, 2001 UT 69, ¶ 6, 31 P.3d 531 ("[Dlistrict courts have wide latitude and discretion in sentencing"); State v. Woodland, 945 P.2d 665, 671 (Utah 1997) ("We traditionally afford the trial court wide latitude and discretion in sentencing."); State v. Gerrard, 584 P.2d 885, 886 (Utah 1978) (noting that "sentencing procedures, including the use of an evaluation, are clearly discretionary with the trial court," and explaining that "the exercise of discretion in sentencing necessarily reflects the personal judgment of the court").

. See, eg., State v. Sanwick, 713 P.2d 707, 708 (Utah 1986) ("Except for ... constitutional restraints, the trial court has broad discretion in imposing sentence within the statutory scope. [The court] must be permitted to consider any and all information that reasonably may bear on the proper sentence for the particular defendant, given the crime committed." (internal quotation marks omitted)); Gerrard, 584 P.2d at 887 (sentence imposed by trial judge will not be reversed unless it is beyond the "proper statutory penalty for the offense" or unless it can be said that "no reasonable man would take the view adopted by the trial court"). See also Dorszynski v. United States, 418 U.S. 424, 431, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) ("[Olnce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end."); United States v. Tucker, 404 U.S. 443, 446-47, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (acknowledging the trial judge's "wide discretion in determining what sentence to impose," including by "conduct[ing] an inquiry broad in scope, largely unlimited ... as to the kind of information he may consider"; explaining that "a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review"); United States v. Colon, 884 F.2d 1550, 1552 (2d Cir.1989) ("Prior to passage of the Sentencing Reform Act, appellate review of sentences was unavailable unless they exceeded statutory limits, resulted from material misinformation or were based upon constitutionally impermissible considerations."); United States v. Dazzo, 672 F.2d 284, 289 (2d Cir.1982) ("When the sentence imposed is within statutory limits, it is generally not subject to review unless the trial court relied on either material misinformation concerning the defendant or constitutionally impermissible factors."); Carissa Byrne Hessick & F. Andrew Hessick, Recognizing Constitutional Rights at Sentencing, 99 Cau. L.Rev. 47, 52 (2011) (noting that under discretionary sentencing regimes, the judge "conduct{s] a separate sentencing proceeding at which he ... impose[s] a sentence within [a] statutory range based on his assessment of 'sentencing' characteristics," which encompass "any number of factors" relevant to the offense, such as "harm to the victim or the defendant's motive," and "facts about the offender himself"); Note, More Than A Formality: The Case for Meaningful Substantive Reasonableness Review, 127 Harv. L.Rev. 951, 952 (2014) (noting that prior to the era of sentencing guidelines reform, "judges enjoyed vast discretion to sentence defendants within a statutory range," and "sentencing appeals were allowed only under narrow circumstances" and were "unreviewable" "[als a practical matter"); Susan R. Klein, The Return of Federal Judicial Discretion in Criminal Sentencing, 39 Vau. U.L.Rev. 693, 693 (2005) (establishing that under the traditional discretionary sentencing regime, sentencing judges "ma[kje all of the moral, philosophical, medical, penological, and policy choices surrounding what particular sentence to impose upon a particular offender," making the sentencing judge the "master of his courtroom").

. See, eg., Apprendi v. New Jersey, 530 U.S. 466, 481, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (recognizing that "judges in this country have long exercised discretion ... in imposing sentence within statutory limits in the individual *272 case"); Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (noting that "'before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law"); Klein, supra note 2, at 697 (explaining that prior to sentencing guidelines reform, judges had "enormous and essentially unbridled authority to impose a sentence anywhere within the legislatively prescribed range," and "possessed full discretion to consider any information about the offender and offense that they thought relevant and helpful in determining the appropriate sentence").

. See Gerrard, 584 P.2d at 887 (1978) (explaining that the trial court "has the main responsibility for sentencing" and "attempts to arrive at a proper sentence based on the facts and law before it").

. See Padilla v. Bd. of Pardons & Parole, 947 P.2d 664, 669 (Utah 1997) (explaining that the court sets "an indeterminate sentence as provided by statute" which continues until the maximum amount of time elapses unless the parole board "terminates or commutes the punishment or pardons the offender"); Urax Sentencins anp Reteass Guipetines 1 (2013) ("An offender sentenced to prison is legally subject to the full length of the sentence pronounced by the sentencing judge. Ultimately, the final decision regarding the actual length of incarceration is the responsibility of the Board of Pardons and Parole: that decision may, or may not reflect the guideline recommendation, and may be up to the full length of the indeterminate range pronounced by the sentencing judge.").

. State v. Sweat, 722 P.2d 746, 746 (Utah 1986) ("[Slo long as basic constitutional safeguards of due 'process and procedural fairness are afforded, the trial court has broad discretion in considering any and all information that reasonably may bear on the proper sentence." (internal quotation marks omitted)). See also Klein, supra note 2, at 693 (noting that the judge in the traditional system of discretionary sentencing "held a sentencing hearing if he wanted one, ... heard whatever evidence he felt relevant, and ... made all of the moral, philosophical, medical, penological, and policy choices surrounding what particular sentence to impose upon a particular offender").

. State v. Killpack, 2008 UT 49, ¶ 18, 191 P.3d 17("[Wle review a trial court's decision to deny probation under an abuse of discretion standard and will overturn a sentencing decision only if it is clear that the actions of the [trial] judge were so inherently unfair as to constitute an abuse of discretion." (internal quotation marks omitted)); Gerrard, 584 P.2d at 887-88 (Utah 1978) ("Before this Court will overturn the sentence given by the trial court, it must be clear that the actions of the judge were so inherently unfair as to constitute abuse of discretion.").

. See State v. Lipsky, 608 P.2d 1241, 1248 (Utah 1980) (information in presentence report may not be considered in sentencing unless provided to the defendant for the purpose of review and response; holding that a "defendant's right to be sentenced on the basis of information that is accurate can be protected only if the pre-sen-tence report is disclosed to him prior to sentencing"). See also Note, supra note 2, at 952 & n. 6 (noting that in traditional discretionary sentencing regimes, "judges enjoy vast discretion to sentence defendants within a statutory range" and that "sentencing appeals [are] allowed only under narrow circumstances," as where they result from "material misinformation" or are "based upon constitutionally impermissible considerations" (quoting United States v. Colon, 884 F.2d 1550, 1552 (2d Cir.1989))).

. Gerrard, 584 P.2d at 887 (Utah 1978) (explaining that "the exercise of discretion in sentencing necessarily reflects the personal judgment of the court and the appellate court can properly find abuse only if it can be said that no reasonable man would take the view adopted by the trial court"); State v. Galli, 967 P.2d 930, 939 (Utah 1998) (same); State v. Branch, 129 Wash.2d 635, 919 P.2d 1228, 1235 (1996) (en banc) ("The length of an exceptional sentence will not be reversed as clearly excessive absent an abuse of discretion.... A sentence is clearly excessive if it is based on untenable grounds or untenable reasons, or an action no reasonable judge would have taken."); Banks v. State, 732 So.2d 1065, 1068 (Fla.1999) (explaining that sentencing discretion is only abused when "no reasonable person would agree with the trial court's decision").

. See also Baine v. Beckstead, 10 Utah 2d 4, 347 P.2d 554, 560 (1959) (affirming sentencing judge's decision not to suspend sentence and impose probation); Williams v. Harris, 106 Utah 387, 149 P.2d 640, 641-42 (1944) (affirming trial court's decision to revoke an order suspending sentence).

. See Klein, supra note 2, at 693 & n. 4 (indicating that in the traditional scheme of discretionary sentencing, there are "no standards to assist or confine the judge in making his determination;" listing as limited exceptions the following: "(1) a sentence imposed using constitutional criteria, such as race or political viewpoint, Wayte v. United States, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); (2) a vindictive sentence based upon a defendant's assertion of his constitutional right to appeal his conviction, North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); and (3) a term of years or fine so excessive compared to the crime that it, offended the Eighth Amendment's proportionality requirement, Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); United States v. Bajakajian, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998).").

, United States v. Kaba, 480 F.3d 152, 156 (2d Cir.2007).

. Id.; see also United States v. Borrero-Isaza, 887 F.2d 1349, 1355 (9th Cir.1989); United States v. Gomez, 797 F.2d 417, 419 (7th Cir.1986).

. United States v. Maples, 501 F.2d 985, 985-86 (4th Cir.1974).

. See Klein, supra note 2, at 699 ("The indeterminate sentencing model began to unravel in the *275 early 1970s, in response to criticism that the rehabilitation model was a failure and that indeterminate sentencing resulted in unwarranted disparities for similarly situated defendants based on such illegitimate considerations as geography, race, gender, socio-economic status, and judicial philosophy. The sentencing reform ' movement, utilizing guidelines drafted by a legislature or commission to tightly cabin judicial discretion, was thus born at the state and federal levels." (footnotes omitted)); Note, supra note 2, at 952-53 (explaining that "the sentencing reform movement of the 1970s and 1980s ... was animated by a desire to eliminate the unwarranted disparities perceived to be caused by sentencing judges' unbridled discretion"). The majority's reaction to the discretion afforded by our legislature under Utah Code section 76-5-302(3) seems to me to be animated by concerns that parallel those of the sentencing reform movement that gave rise to sentencing guidelines in federal law and in various states. Such concerns are understandable. But if there is a problem, it is not in the statute at issue here; it is in the overall scheme that we have long adopted. I dissent from what I see as a piecemeal attempt at repeal or reform of our discretionary system of sentencing. If we are to embrace reform, we should do so comprehensively and carefully. And any such effort should start in the legislature, not in this court.

. See generally Mistretta v. United States, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (discussing federal sentencing guidelines and upholding them against constitutional attack; concluding that guidelines do not amount to an unconstitutional delegation of legislative power nor a violation of the principle of separation of powers); Kevin R. Reitz, Sentencing Reform in the United States: An Overview of the Colorado Law Review Symposium, 64 U. Coro. L.Rev. 645 (1993) (discussing sentencing reform efforts in the states); Daniel J. Freed, Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers, 101 Yar LJ. 1681 (1992) (discussing sentencing reform efforts under federal law).

. See eg., Freed, supra note 16, at 1690 (criticizing the United States Sentencing commission and its guidelines as "more complex, inflexible, and severe than those devised by any other jurisdiction" (footnotes omitted)); id. at 1686-87 (noting that soon after their enactment and implementation, the federal guidelines "provoked dismay and evasion in the federal courts and the bar" due to "a powerful sense that the guidelines dictate unjust sentences in too many cases," and that "[mJany judges [] conform[ed] to the guidelines with a deep sense of distress" due to their broad and rigid requirements); Kare Sriru & Joss A. CasranEs, Fear or Jupainc: Sentence GuipeLinEs In tHE Feperar Courts (1998) (arguing that the most profound deficiency of the federal sentencing guidelines is that they are unexplained, and therefore lawless, and calling for a return of sentencing discretion to federal judges without "bureaucratic" rules).

. In any event, the continuing viability of the Solem standard of proportionality is an open question in cases not involving the death penalty. In Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the court rejected an Eighth Amendment challenge to the imposition of a sentence of life without parole for possession of cocaine, holding that "mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." Id. at 994, 111 S.Ct. 2680. And on the applicability of the Solem proportionality standard, the court was deeply splintered; it ventured no majority view. See id. at 979-85, 111 S.Ct. 2680 (opinion of Scalia, J., joined by Rehnquist, C.J., concluding that Solem should be overruled and articulating an originalist view of the Eighth Amendment under which an "unusual punishment" is understood as a particular mode of punishment that was infrequently imposed, not one that was excessively lengthy in comparison to other punishments imposed for similar 'crimes); id. at 996-1005, 111 S.Ct. 2680 (opinion of Kennedy, J., joined by O'Connor, J., and Souter, J., expressing disagreement with aspects of the Solem test-particularly the "intra-and in-terjurisdictional" comparison of sentences for comparable crimes-while expressing support for a "narrow proportionality principle"); id. at 1009-27, 111 S.Ct. 2680 (opinion of White, J., joined by Blackmun, J., and Stevens, J., expressing support for the Solem standard and concluding that Harmelin's sentence was unconstitutional; asserting that the "narrow" proportionality principle favored by Justice Kennedy effectively "eviscerates'" Solem, leaving only an "empty shell" in its place). Thus, after Harmelin, the general applicability of the Solem standard of proportionality is a matter of grave doubt, particularly in cases not involving the death penalty. See Richard S. Frase, Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: Proportionality Relative to What?, 89 Minn. L.Rev. 571, 581-84, 588-89 (2005) (discussing the ongoing debate regarding the effect of Harmelin and subsequent cases on constitutional proportionality analysis).

. See Urax Cope § 76-4-204(2) (conferring discretion on sentencing judge to impose lesser sentence for crimes of solicitation if the court finds that a lesser term is "in the interests of justice" and states the reasons for this finding on the record); id. § 76-5-301.1 (providing for downward departure in the "interests of justice" in child kidnapping cases); id. § 76-5-402(4) (rape); id. § 76-4-102(2) (murder); id. § 76-4-102(3)(); id. § 76-3-203.2(5) (use of dangerous weapon in offenses committed on or about school premises).

. See Ura Cope § 78B-1-136 (establishing witness's right "to be detained only so long as the interests of justice require"); id. § 77-8a-1(2)(d) (requiring joint trial of co-defendants unless separate trials would be "in the interests of justice").

. See Rahofy v. Steadman, 2012 UT 70, ¶ 12 n. 12, 289 P.3d 534 (identifying "stylistic changes" in legislative amendments that had "no substantive effect on our analysis"); Gressman v. State, 2013 UT 63, ¶ 63, 323 P.3d 998 (Lee, J., dissenting) ("[The key question ... is whether the change under review is in fact material. Some legislative amendments are not. Some are aimed only at clarification, or at stylistic or semantic refinement.").

. See In re Estate of Hannifin, 2013 UT 46, ¶¶ 25-26, 311 P.3d 1016 (explaining that on "any matter of statutory construction of any consequence, it will almost always be true" that the legislature could have spoken more clearly, while indicating that such "failure to speak more clearly" tells us nothing of consequence to our interpretation of the language that it used) In re Adoption of Baby E.Z., 2011 UT 38, ¶ 75, 266 P.3d 702 (Lee, J., concurring) ("[One can almost always imagine clarifying amendments cutting both ways.... It adds nothing analytically to hypothesize how Congress might have spoken with greater clarity. We instead must simply ask what Congress did say and interpret it as best we can.").

. Sentencing law in other jurisdictions confirms the understanding of consideration of the interests of "justice" as a reference to broad sentencing discretion. See United States v. Steiner, 239 F.2d 660, 662 (7th Cir.1957) (noting the longstanding principle of "judicial discretion" in sentencing, while explaining that it encompasses the judge's prerogative of imposing a sentence "upon such terms and conditions as the court deems best," or in other words terms consistent with "the ends of justice and the best interest of the public as well as the defendant" (emphasis added) (citation omitted)); United States v. Danilow Pastry Co., Inc., 563 F.Supp. 1159, 1166 (S.D.N.Y.1983) (noting that in "1925[,] when the first federal probation statute was enacted, every state had such a statute to give judges discretion to suspend overly harsh sentences in the interests of justice," and speaking of the need for the law to "devise flexible sentences" and to engage in "creative" sentencing ""in the interests of justice" (emphasis added)).

. The majority's approach has no logical stopping point. If it is taken seriously and extended to its logical limits, today's decision may eventually be understood to require proportionality review of every sentence imposed in the courts of the State of Utah, since the "interests of justice" are at least presumptively relevant to alf sentencing decisions. And even if the court's approach is limited to sentences imposed under statutes expressly calling for consideration of the "interests of justice," the impact of today's decision still will be sweeping, as that phrase is employed in a wide range of statutes cited above. Supra 120, notes 19 & 20. That sweeping extension would be troubling, as it would represent a broad judicial overhaul of the discretionary sentencing regime that our law has long adopted.

. See Paul H. Robinson & Barbara A. Spellman, Sentencing Decisions: Matching the Decision-maker to the Decision Nature, 105 Couum. L.Rev. 1124, 1136 (2005) ("[Bloth judges and juries are properly excluded as decisionmakers because of the disparity problem: To rely on either is to allow offenders brought before different decision-makers to be subject to different punishment rules.").